SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION LOCAL UNION NO. 359, Plaintiff–Appellee,

v.

MADISON INDUSTRIES, INC., OF ARIZONA, Defendant–Appellant.

Nos. 94–15376, 94–17077.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1996.

Decided May 29, 1996.

**1188**

M. Douglas Tobler, John R. Tellier, Hammond, Natoli & Tellier, Phoenix, Arizona, for defendant-appellant.

Rosemary Cook, Phoenix, Arizona, for plaintiff-appellee.

Before SNEED, NORRIS, and WIGGINS, Circuit Judges.

SNEED, Circuit Judge:

Madison Industries, Inc., of Arizona ("Madison") appeals two grants of summary judgment against it in Sheet Metal Workers' International Association Local Union No. 359's ("the union") action to enforce an arbitration award under 29 U.S.C. § 185. In the first appeal, No. 94–15376, Madison contests the district court's enforcement of the arbitration award; denial of Madison's motions for reconsideration/new trial and to supplement the record; and grant of attorney's fees to the union. In the second appeal, No. 94–17077, Madison quarrels with the district court's award of damages and striking of an affidavit. We affirm both judgments.

## I.

*BACKGROUND OF THE ARBITRATION AWARD*

This case arises out of a labor dispute that has stubbornly resisted resolution. Hopefully, our disposition of this case will hasten that resolution. The background of this dispute is as follows.

Madison is an Arizona corporation that manufactures and installs prefabricated buildings. To those ends, it employs workers skilled in sheet metal work and other trades. It is a party to two collective bargaining agreements ("contracts") with the union—one covering "building trades," or "outside," workers, the other covering "production," or "inside," workers.

According to the union, this case stems from the layoff of ten Madison sheet metal employees. On February 26, 1993, the union's business agent, Ted Lewis, received phone calls from members who had been laid off from Madison and replaced with employees from Crown Technical Industries ("Crown"), a non-signatory to the contracts between the union and Madison. When Lewis complained to Madison's project manager, Dan White, that by subcontracting this work to a non-signatory employer, Madison was violating its contract with the union, White responded that Madison could not afford the union members' wages.

According to Madison, this dispute evolved from a different problem—Lewis' insistence that production, or "inside," workers not perform work he claimed belonged to building trades, or "outside," workers. Madison claims that its contract with the production workers allowed those workers to do the tasks which Lewis claimed for the building trades workers. Because of Lewis' interference, and because the union failed to dispatch workers with the proper skills, Madison was forced to hire employees of Crown or Dave Bailey Construction Services ("DBCS"), both non-signatories, to do work covered by the collective bargaining agreements with the union.

On March 8, 1993, the union filed a grievance as authorized in the building trades contract, requesting arbitration before the Phoenix Sheet Metal Joint Adjustment Board ("PAB"):

> Over the past few months Madison Industries has been hiring non-signatory employees to do production and building trades work. During the last two weeks in February Madison terminated five apprentices/probationary apprentices and five journeymen and replaced them with non-signatory workers from [Crown]. These replacement workers have been hired to do the work that has been traditionally union sheet metal journeymen and apprentices and were not dispatched out of the local

union from the out of work list, as per the agreement.

According to the contract's grievance procedures provision, Article X, section 2, "[e]xcept in the case of deadlock, a decision of a Local Joint Adjustment Board shall be final and binding."

The arbitration hearing was held on April 16 before a panel consisting of three sheet metal contractors and two union representatives. During the hearing, the union introduced nine photographs taken at Madison's premises immediately following the layoffs.[1] At the hearing, Madison stipulated that the work being performed in the photographs had within the last five to ten years been performed by building trades employees. Madison also stipulated that the workers in the photographs had not been referred through the union hall as the contract required.

The PAB found that Madison, contrary to its contentions, had violated its contract with the building trades workers "in that they have not called Sheet Metal workers through the union hall and have retained sub contractors and Crown Technical to perform sheet metal work." The PAB ordered Madison to "reinstate those members of Local 359 that were replaced by Crown Technical personnel and DBCS personnel ... and also pay one

(1) weeks wages plus fringes to those members that were terminated because of this violation of the agreement." The arbitration award provided for additional penalties to be imposed if Madison failed to comply with the initial award within 48 hours.[2]

Madison did fail to comply with the award, neither reinstating the laid-off employees nor paying them one week's wages. Therefore, the PAB issued a new order on April 30, 1993, imposing the additional penalties. Madison failed to comply with the new order as well. On May 24, 1993, the union filed a petition in federal district court to enforce the arbitration award. Madison counterclaimed seeking to vacate the award.

On December 20, 1993, the district court upheld the award and granted summary judgment in favor of the union. Madison filed a motion for reconsideration or a new trial, and a motion to supplement the record. The district court denied both motions on January 24, 1994. Madison timely filed a notice of appeal on February 17. The union then filed a motion for summary judgment on damages, which the district court granted on October 24. Madison timely appealed from that judgment on November 10.

The district court had jurisdiction pursuant

---

1. Copies of these photographs are included in the union's Appendix A, the propriety of which is disputed between the parties. Madison is correct that the union ought to have prepared Supplemental Excerpts of Record rather than an appendix. *See* Cir. R. 30–1.6. This error is purely a matter of form, however, as the contents of the appendix are proper. All but two of the items it contains are in the Clerk's Record, and therefore could have been included in the excerpts of record. The two exceptions are district court orders (1) awarding attorney's fees and costs (filed April 6, 1994), and (2) granting the union's motion for summary judgment on damages (dated October 21, 1994). These orders are not in the Clerk's Record because they were filed after Madison filed a notice of appeal of the grant of summary judgment on liability. *See infra* Parts II.C; III.A. Since the issues addressed in these two orders are before us in the second appeal, it is appropriate that the orders be part of the record before us.

2. The additional penalties were as follows:
 1. Reinstate Local 359 Journeymen, Apprentices and Probationary Apprentices to their

former positions at full wages and fringe benefits as per the Collective Bargaining Agreement.
 2. Pursuant to Article XXV order a Certified Public Accountant to audit all the books and records of Madison Industries to record all hours worked by non-signatory employees, Crown Technical, and DBCS.
 3. Order Madison to pay all lost wages and fringe benefits that would have been paid to Journeymen, Apprentices and Probationary Apprentices that were not paid because of the violation of the Collective Bargaining Agreement.
 4. Order that Madison Industries be prohibited from using any employees, independent contractors, or subcontractors (non-signatory) for any Sheet Metal work. They are to hire all Sheet Metal Workers through the Local Unions hiring hall. They are to provide a monthly report listing names, addresses, phone numbers of all employees, independent contractors, and subcontractors used on a weekly basis to Local 359.

**1190**

to 29 U.S.C. § 185.[3] Our jurisdiction is pursuant to 28 U.S.C. § 1291.

## II.

### THE FIRST APPEAL

**A. The Grant of Summary Judgment Enforcing the Arbitration Award**

Madison argues that the district court erred in granting summary judgment enforcing the arbitration award, because the PAB exceeded its authority in a number of ways. We disagree.

### 1. Legal Standards

■ We review de novo the district court's grant of summary judgment confirming an arbitration award. *Pack Concrete, Inc. v. Cunningham,* 866 F.2d 283, 284 (9th Cir.1989). Section 301 of the Labor Management Relations Act authorizes the district courts to enforce or vacate an arbitration award entered pursuant to a collective bargaining agreement. 29 U.S.C. § 185(a); *Sheet Metal Workers Int'l Ass'n, Local Union No. 150 v. Air Sys. Eng'g, Inc.,* 948 F.2d 1089, 1091 (9th Cir.1990). However, judicial review of an arbitration award is both limited and highly deferential. *Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Arizona Mechanical & Stainless, Inc.,* 863 F.2d 647, 653 (9th Cir.1988). Thus, the court may not review the merits, but must ask only whether the grievance is governed by the contract and whether the parties agreed to arbitrate the dispute. *United Steelworkers of Am. v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). As long as the award "draws its essence" from the contract, meaning that on its face it is a plausible interpretation of the contract, then the courts must enforce it. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Arizona Mechanical,* 863 F.2d at 653. The arbitrator's interpretation of the scope of issues submitted to him is entitled to the same deference. *Pack Concrete,* 866 F.2d at 285.

■ In interpreting the contract, the arbitrator is not bound by precedent or by the record before him; rather, "the industrial common law-the practices of the industry and the shop-is equally a part of the collective bargaining agreement although not expressed in it." *Warrior & Gulf Navigation Co.,* 363 U.S. at 581–82, 80 S.Ct. at 1352; *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173,* 886 F.2d 1200, 1206 (9th Cir.1989) (en banc), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

### 2. Did the PAB Exceed Its Authority?

■ With these standards in mind, we examine Madison's objections to the scope of authority exercised by the PAB. First, Madison contends that the charge submitted by the union complained of replacements of both building trades *and* production workers by non-signatory employees, yet the PAB improperly exercised its authority under the building trades contract only. However, Madison stipulated at the hearing that the work being done by replacement workers had been done by building trades workers during the last 5–10 years. Further, although the PAB made no explicit finding that the laid-off workers were building trades employees, such a finding is implicit in its decision.

Madison's position at the arbitration hearing was that the disputed work belonged to production workers because it was performed at Madison's plant rather than an off-premises "job site." Madison wanted the work to be done by production workers (who are paid less than outside workers), and when the union would not allow that, Madison laid off union workers and hired non-signatory em-

---

**3.** That provision states:
(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

ployees in their place. The union's position was that the disputed work was covered by the building trades contract because it was the *type* of work listed in Article I of that contract, and that *where* the work was done was irrelevant.

Given that context, the PAB could have found that the laid-off workers must have been building trades workers. It could have agreed, moreover, with the union's interpretation of the work covered by the building trades contract. We cannot say that that interpretation is implausible. Therefore, we cannot find that the PAB exceeded its authority by arbitrating the dispute under the building trades contract.

Madison next argues that the building trades contract could not provide the PAB's authority because the work being performed was in fact production work. Again, the PAB apparently agreed with the union's, rather than Madison's, interpretation of the building trades contract, an interpretation not implausible on its face. Moreover, Madison's stipulation, that recently building trades employees had been doing what it now alleges was production work, lends weight to the PAB's conclusion. Under these circumstances, it was quite reasonable for the PAB to exercise its authority under the building trades contract.[4]

Madison argues next that the grievance was time-barred because the charge, which defines the scope of the arbitrator's authority, stated that "[o]ver the past few months Madison Industries has been hiring non-signatory employees." Article 10, section 1 of the contract requires that "[t]o be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance." Thus, Madison argues that the grievance was time-barred.

However, the grievance also stated: "During the last two weeks in February Madison terminated five apprentices/probationary apprentices and five journeymen and replaced them with non-signatory workers from Crown Technical Services Inc." The griev-

ance and the proceedings that followed clearly concerned the ten employees laid off on February 25 and 26. The union's March 8 charge therefore fell well within the 30–day limitation.

Madison further complains that the union's charge referred to replacement workers from Crown only, and that the arbitrators therefore had no authority to address the replacement workers from DBCS. However, when Lewis filed the grievance, he had been told only about the Crown employees. The hearing transcript reveals that by the time of the hearing, all parties were aware that some of the replacement workers were from DBCS. It was reasonable for the PAB to interpret the charge as also including the employees who were replaced by DBCS workers.

■ Finally, Madison argues that the grievance did not request back pay and the PAB was therefore without authority to award back pay. This argument is without merit. It is within an arbitrator's authority to award back pay once he or she has concluded that an employer improperly laid off employees. *Pack Concrete, Inc.,* 866 F.2d at 283–84 (upholding arbitration award, including award of back pay despite lack of request for back pay in union's charge); *Dayton Tire & Rubber Co. v. NLRB,* 591 F.2d 566, 571 (10th Cir.1979) (finding of unfair labor practice and discriminatory discharge is presumptive proof that some back pay is owed); *ILWU Local 142 v. Land & Constr. Co., Inc.,* 498 F.2d 201, 206 (9th Cir.1974) (affirming remand to arbitrator to determine amount of back pay).

The PAB did not exceed its authority. The award was properly enforced.

### B. *The Motions to Reconsider and to Supplement the Record*

■ The collective bargaining agreement covering the building trades employees expired on July 31, 1993, three months after the award was issued. When Madison and the union failed to negotiate a new contract,

---

4. Madison argues that a National Joint Adjustment Board order of October 1993 dividing up the work between the building trades and production workers along the lines urged by Madi-

son is relevant to the PAB's April 1993 decision. As discussed *infra* Part II.B, this contention lacks merit.

they turned to interest arbitration before the National Joint Adjustment Board for the Sheet Metal Industry ("NJAB"), as prescribed in Article X, section 8 of the expired contract. The NJAB's decision, issued December 9, 1993, resolved the parties' dispute concerning which work belonged to production employees and which to building trades employees. As a result, some of the work implicitly treated as building trades work by the PAB's April arbitration award was assigned to production workers in the new contract. Madison thereafter filed a motion for reconsideration and to supplement the record in this case, arguing that the NJAB decision vindicated Madison's position. This contention is meritless.

 The district court's denial of the motion for reconsideration or a new trial is reviewed for an abuse of discretion. *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1405 (9th Cir.1995) (new trial); *Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir.1994) (reconsideration). The denial of the motion to supplement the record is also reviewed for an abuse of discretion. *In re Lindsay*, 59 F.3d 942, 950 (9th Cir.1995), *cert. denied by Lindsay v. Beneficial Reinsurance Co.,* —— U.S. ——, 116 S.Ct. 778, 133 L.Ed.2d 730 (1996).

The NJAB decision is simply irrelevant to this case. It resolved the parties' dispute about the allocation of work between production and building trades workers for the purposes of a *new* contract effective August 1, 1993.[5] The PAB's award, on the other hand, interpreted the *old* contract that expired on July 1, 1993. The reasonableness of its interpretation of the old contract was not affected by the NJAB's decision concerning the new contract. Therefore, the district court did not abuse its discretion in refusing to reconsider its decision or to allow evidence of the NJAB decision.

5. The NJAB decision stated: "The Parties *shall enter into an agreement* identical in terms and conditions to the Standard Form of Union Agreement . . . ." (emphasis added).

6. The union argues that this court cannot consider the attorney's fees issue because Madison did not appeal the April 5, 1994, order granting fees in the amount of $3,985. The union errs. In its

### C. The Award of Attorney's Fees [6]

 Ordinarily, the prevailing party in a lawsuit does not collect attorney's fees absent contractual or statutory authorization. *International Union of P.I.W. v. Western Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir.1983). However, a court may award fees if it finds that the losing party " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Id.* (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)). We adhere to the lower court's finding of bad faith unless it was clearly erroneous; if the bad faith finding stands, we then review the award of fees for an abuse of discretion. *Id.* "[A]n unjustified refusal to abide by an arbitrator's award may equate an act taken in bad faith, vexatiously or for oppressive reasons." *Id.*

 The district court found that Madison acted in bad faith in failing to respect the arbitration award. The court found it significant that Madison simply refused to honor the award rather than filing a petition to vacate it, and requested a vacation of the award only in response to the union's petition to confirm it. The finding of bad faith was not clearly erroneous. We have observed Madison's obduracy and conclude that the court did not abuse its discretion in awarding attorney's fees.

### III.

### THE SECOND APPEAL

#### A. The Back Pay Award: Subject Matter Jurisdiction

 Madison argues that its notice of appeal from the first grant of summary judgment, filed on February 17, 1994, deprived the district court of jurisdiction to hear the union's subsequent motion for summary

February 17 notice of appeal, Madison appealed the court's December 20 order granting summary judgment on the merits and awarding attorney's fees. Madison is appealing not the specific amount awarded (the subject of the April 5 order), but the grant of fees as a concept (the subject of the December 20 order).

judgment fixing the amount of back pay. Madison relies on *Davis v. United States*, 667 F.2d 822, 824 (9th Cir.1982) (filing of notice of appeal divests the district court of jurisdiction over the matters appealed). *Davis* is inapposite where, as here, the first summary judgment addressed liability and the second damages.

■ Rather, the outcome of this dispute is directed by *Brown v. United States Postal Serv.*, 860 F.2d 884, 886 (9th Cir.1988). There, we held that an initial judgment entered by the district court establishing liability but leaving for subsequent decision the amount of back pay and attorney's fees was not a final judgment. Filing of a notice of appeal from a non-final judgment is not effective to divest the district court of jurisdiction to award damages.[7]

### B. The Striking of the Sentell Affidavit

■ In opposition to the union's motion for summary judgment on damages, Madison submitted a single piece of evidence—an affidavit of its general manager, John Sentell. The affidavit stated that two of the allegedly laid-off employees, Randy Halliburton and Norman Jusseaume, were not in fact laid off at the end of February, but were terminated later in 1993 because there was no work for them to do. Sentell also stated that Madison had attempted to rehire a third employee, John Cooper, but he refused to return. Finally, Sentell stated that the other laid-off workers would have been terminated in mid-March anyway for lack of work. The district court ordered the first three paragraphs stricken for lack of personal knowledge, and the last four stricken because they dealt with liability issues already decided by the court.

■ We review the striking of the affidavit for an abuse of discretion; if the lower court abused its discretion, we then ask whether the error was prejudicial.[8] The evidentiary requirements for summary judgment papers are described in Fed.R.Civ.P. 56(e): "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." To raise a genuine issue sufficient to survive summary judgment, an affidavit must set forth specific facts tending to show the truth of the allegation.[9]

Sentell's affidavit stated that he had personal knowledge of the facts to which he testified. As Madison's general manager, he was in a position to have such knowledge. The district court, therefore, arguably abused its discretion in concluding that Sentell lacked personal knowledge of hiring events at Madison. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir.1990) (that personal knowledge requirement has been met can be inferred from the affidavit); *Ondis v. Barrows*, 538 F.2d 904, 907 n. 3 (1st Cir.1976) (personal knowledge established by affiant's statement that he was the officer manager and became familiar with the relevant events). However, any such error was harmless because the three paragraphs in question should have been stricken for lack of specific supporting facts, such as the dates of the layoffs, or evidence, such as copies of paychecks. *See Barnes*, 64 F.3d at 1396 n. 3; *Richardson*, 12 F.3d at 1378.

The district court also struck the other four paragraphs because they dealt with lia-

7. Although this finding nullifies Madison's first notice of appeal, we have jurisdiction over the first appeal because Madison's appeal from the final judgment extended to all previous orders in the case. *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 791 F.2d 1356, 1359–60 (9th Cir.1986), *cert. denied by Los Angeles Raiders v. National Football League*, 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987); *Munoz v. Small Business Admin.*, 644 F.2d 1361, 1364 (9th Cir.1981).

8. *City of Long Beach v. Standard Oil Co.*, 46 F.3d 929, 936–37 (9th Cir.1995).

9. *Taylor v. List*, 880 F.2d 1040, 1045–46 (9th Cir.1989); *see also Barnes v. Independent Automobile Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1396 n. 3 (9th Cir. 1995) (statement opposing summary judgment is insufficient to raise a genuine issue where the basis for, or evidence supporting, the contention is not put forth); *Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir.1994) (court may strike affidavit that lacks specific facts).

bility issues already considered and decided by the court. That determination was not an abuse of discretion.

### C. The Grant of Summary Judgment Fixing Back Pay

■ In contesting the summary judgment awarding $90,589.78 plus interest in back pay, Madison repeats a number of arguments related to liability. We need not address these again. More to the point is its argument that there is a genuine issue of fact as to the amount of back pay due because the laid-off workers might not have worked 40–hour weeks.

In support of its summary judgment motion, the union submitted an affidavit of its bookkeeper, Irene Pysz, accompanied by records showing the amount of time each of the ten workers were out of work. This was sufficient evidence to satisfy the union's "initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). It then became Madison's burden to set forth " 'specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting Fed. R.Civ.P. 56(e)). Since it submitted no evidence that the employees would not have worked 40 hours per week—for example, records showing that those employees who remained worked less than 40 hours—it failed to carry this burden. Summary judgment in favor of the union was therefore proper.

Madison argues that the case should be remanded to the arbitrator for calculation of the back pay award. If there were any indication of a genuine factual dispute, that would be the proper course.[10] We find remand unnecessary, however, where the calculation is straightforward, amply supported by the union's evidence, and uncontroverted by any evidence submitted by Madison.[11] We therefore affirm the judgment of the district court.

AFFIRMED.

---

10. *See, e.g., Edna H. Pagel, Inc. v. Teamsters Local Union 595,* 667 F.2d 1275, 1277 (9th Cir. 1982) (affirming grant of union's motions to confirm award and to compel arbitration of employer's back pay liability); *Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 863 (9th Cir.) (in action for wages under a collective bargaining agreement, findings concerning hours and work patterns, and amount of wages paid, are within matters committed to arbitration by the contract), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979); *ILWU Local 142,* 498 F.2d at 206 (affirming district court's remand to arbitrator to determine exact amount of back pay due); *Hanford Atomic Metal Trades Council v. General Elec. Co.,* 353 F.2d 302, 307–08 (9th Cir.1965) (affirming district court's remand to

arbitrator to determine which party's interpretation of scope of back pay award is correct).

11. *See, e.g., United Transp. Union v. Southern Pacific Transp. Co.,* 529 F.2d 691, 693 (5th Cir. 1976) (concluding that where back pay award can be clarified by reference to extrinsic evidence not involving the arbitrator's special expertise, district court may so clarify); *Holodnak v. Avco Corp.,* 514 F.2d 285, 286–87 (2d Cir.) (affirming district court's vacation of arbitration award favorable to employer, refusal to reinstate terminated employee, and award of $9,113.24 in back pay), *cert. denied,* 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975).