ASSOCIATION OF WESTERN PULP & PAPER WORKERS, LOCAL 78, Plaintiff–Appellant,

v.

REXAM GRAPHIC, INC., Defendant–Appellee.

No. 99–35862.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 2000

Filed Aug. 8, 2000

Gregory A. Hartman, Bennett, Hartman & Reynolds, Portland, Oregon, for the plaintiff-appellant.

Paula A. Barran, Barran Liebman, Portland, Oregon, for the defendant-appellee.

Before: GOODWIN, GRABER and FLETCHER, Circuit Judges.

## OPINION

GOODWIN, Circuit Judge:

The Association of Western Pulp and Paper Workers, Local 78 (the "Union") appeals the dismissal of its petition to vacate an arbitration award under the Labor Management Relations Act, 29 U.S.C. § 185(a). The Union alleges that the arbitrator's award resolving the Union's dispute with Rexam Graphics, Inc. ("Rexam"), regarding the discharge of an employee, exceeded the scope of the issues presented for arbitration and did not draw its essence from the collective bargaining agreement.

### STANDARD OF REVIEW

We review a summary judgment disposition as a matter of law. *See Robi v. Reed,* 173 F.3d 736, 739 (9th Cir.1999). An arbitrator's award is entitled to deference from a reviewing court, and it should be overturned only if: (1) it does not draw its essence from the collective bargaining agreement, or (2) the arbitrator exceeds the boundaries of the issues submitted, or (3) the award runs counter to public policy. *See SFIC Properties, Inc. v. International Ass'n of Machinists & Aerospace Workers, Local Lodge 311,* 103 F.3d 923, 925 (9th Cir.1996).

### FACTUAL AND PROCEDURAL BACKGROUND

Mary Greene, an employee of Rexam, a specialty paper company, was fired from her job on May 6, 1998, for leaving work without permission on that day. Greene had been on reprimand status for excessive absenteeism. The company claimed that she had a poor safety record and attitude, failed to take criticism well, was not dependable, and had "a strained relationship with her co-workers." On the day of her discharge, Greene said initially that she was sick, then that her absence was "personal," and finally that she had just started her menstrual period and did not have the money to purchase necessary sanitary supplies. After her termination, the Union timely filed a grievance, and the case was submitted for arbitration under the Union's collective bargaining agreement ("CBA") with Rexam.

Arbitrator Sandra Smith Gangle held a hearing to resolve the dispute. She concluded that Rexam had acted without just cause in discharging Greene because Rexam had never notified the Union of its concerns about her and did not thoroughly investigate Greene's proffered reasons for leaving work on the date of her firing. However, the arbitrator also found that Greene "was untruthful at the arbitration hearing," that she had lied on her application for unemployment benefits, and that her dishonesty had caused the employer-employee relationship to deteriorate "to the point where [Greene] can no longer be trusted." Thus, she decided to award only backpay and benefits to the date of the hearing, but to deny reinstatement because of Greene's post-termination conduct and untruths.

The parties then filed cross-motions for summary judgment in the district court, and the magistrate judge made findings and recommendations consistent with the Union's contention that the arbitrator had exceeded the scope of the issues presented to her. The magistrate judge said that the arbitrator erred by considering Greene's post-termination conduct (i.e., her repeated dishonesty) in fashioning an appropriate remedy.

On *de novo* review, however, the district judge declined to adopt the magistrate judge's findings and instead granted summary judgment in favor of Rexam. The district court cited the public policy justifying the deference granted to arbitrators in the effort to achieve speedy resolutions of labor disputes. The court held that the arbitrator did not exceed the scope of the issues presented, as she was expressly charged by the parties themselves with deciding both: (1) whether Greene's termination was supported by just cause, and (2) if not, what the appropriate remedy should be. Moreover, upon questioning by the arbitrator, the parties explicitly agreed that she had "the authority to frame the issue based upon the evidence" presented.

The district court further ruled that the arbitrator properly considered Greene's post-termination conduct in crafting an appropriate remedy. It held that the arbitrator understood the remedy determination to be discrete from that of whether Greene was fired for just cause. Indeed, the district court found that the arbitrator's ability to separate these questions was bolstered by the fact that she found Greene's termination was *not* supported by just cause. Backpay and benefits were thus ordered. Reinstatement, however, was deemed to be an inappropriate remedy, given Greene's dishonesty at the hearing and in her application for unemployment benefits, and the probability that the employer would simply discharge her again.

The Union objected to this determination and to the district court's holding. On appeal, it argues that the arbitrator exceeded the scope of the issues presented and that her award did not "draw its essence" from the parties' CBA. The Union protests the arbitrator's consideration of Greene's post-termination conduct in fashioning the remedy, and emphasizes that Rexam never submitted Greene's dishonesty as an independent basis for her discharge. The Union contends that the appropriate remedy would be Greene's reinstatement, allowing Rexam to terminate her (again) for dishonesty, thereby allowing the Union to file a separate grievance and to hold an additional arbitration hearing under the CBA.

## DISCUSSION

**1. Did the arbitrator exceed the scope of the issues presented to her?**

**A. Arbitrator's Framing of the Issue**

■ The CBA governing the Union's relationship with Rexam provided that the employer had "the right to ... suspend or discharge [an employee] for just and sufficient cause." The Union contends that the arbitrator exceeded the scope of the issues in deciding whether Greene's termination was supported by just cause and what the remedy should be. The Union states that it limited the time-frame to be considered by the arbitrator to events occurring only up through the date of Greene's termination by using the word "was" in its submission of the issue:

> Was the termination of Mary Greene for just and sufficient cause under the terms of the labor agreement? If not, what shall be the remedy?

Rexam similarly framed the question as follows:

> Was Mary Greene terminated in violation of the labor agreement, and if so, what is the remedy?

Because there was a slight variance in the wording used, the arbitrator directly questioned the parties, "Do the parties agree that I have the authority to frame the issue based upon the evidence?" Both the

Union and Rexam assented, and the arbitrator (and the district court) interpreted the issue quite sensibly as:

> Was the Grievant terminated for just and sufficient cause, as required by the collective bargaining agreement? If not, what is the appropriate remedy?

■ It is well-established law that as long as an arbitrator's award "'draws its essence' from the contract, ... [his] interpretation of the scope of the issues submitted to him is entitled to [broad] deference." *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus.,* 84 F.3d 1186, 1190 (9th Cir.1996). Courts must and do defer to arbitrators' authority to interpret the parties' submissions in order to resolve labor disputes in a timely and effective manner. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *Pack Concrete v. Cunningham,* 866 F.2d 283, 285 (9th Cir.1989).

In the case before us, the parties directly asked the arbitrator to decide *both* whether Greene was terminated for just cause *and,* if not, what the appropriate remedy should be. The fact that the Union used the word "was" in its submission is a red herring—obviously, an arbitrator should consider only events occurring up through the date of termination to decide whether that termination was supported by just cause when it occurred. This truism does not speak at all to the question of the appropriate remedy, and whether consideration of post-termination conduct is proper in the evaluation of that issue (discussed *infra, see* Part I.B). The parties explicitly agreed to let the arbitrator frame the issue, her assessment was in line with their expectations, and courts are not at liberty to substitute their own interpretation of the parties' submission for that of the arbitrator. *See Pack Concrete,* 866 F.2d at 285; *see also Line Drivers, Pickup & Delivery Local Union No. 81 v. Roadway Express,* 152 F.3d 1098, 1099 (9th Cir.1998).

## B. Arbitrator's Consideration of Greene's Post-termination Conduct

■ The more crucial issue is whether the arbitrator exceeded the scope of the issues presented when she considered the post-termination conduct of Greene in fashioning the remedy. The Union contends that Rexam never submitted Greene's dishonesty as an independent basis for termination, and therefore it should not have entered into the arbitrator's calculus at all.

The Union raises a valid concern in this regard *only if* the arbitrator in fact took into account Greene's dishonesty at the hearing and in her application for unemployment benefits in deciding the threshold issue—i.e., whether she had been terminated for just cause. The district court acknowledged this point as well. However, as the district court held, "(1) whether a termination is supported by just cause is a discrete issue which should be addressed separately from that of a remedy; and (2) that what takes place following a termination may well be a viable basis for limiting the remedy." The court's determination finds support in the Ninth Circuit case of *Ghebreselassie v. Coleman Sec. Serv.,* 829 F.2d 892 (9th Cir.1987). In *Ghebreselassie,* we held that an arbitrator did not act beyond the scope of the issues presented in denying relief to a discharged employee when, as here, the parties had asked the arbitrator to determine: (1) whether the employee was discharged for just cause, *and* (2) if not, to what relief was he entitled. *Id.* at 897–98.

The Union relies on a Fifth Circuit case, *Gulf Coast Industrial Workers Union v. Exxon Co.,* 991 F.2d 244 (1993), to argue that post-termination conduct may never be considered in deciding a remedy. However, the *Gulf Coast* court did not so hold. Rather, it held that the arbitrator should not have relied on an employee's post-discharge behavior *in deciding whether the employer had just cause to fire him* in the first place. *See id.* at 255–56. Of course post-termination conduct should not be

used to determine whether the employer had just cause for the termination; however, this proposition sheds no light on the relevance of such conduct in devising a remedy. The public policy underlying *Ghebreselassie* in this regard is far more sound. It allows arbitrators to craft common-sense remedies responsive to all of the circumstances surrounding the case presented to them, but rightly separates consideration of post-termination factors from the initial just-cause determination.

■ In the case before us, the arbitrator considered Greene's post-termination conduct as a discrete issue relating only to the appropriate remedy, and not as an independent basis for termination. She did not let Greene's dishonesty influence her initial decision regarding whether Greene had been terminated for just cause, as evidenced by the very fact that she first ruled *against* Rexam on this threshold issue. However, the arbitrator then decided to award backpay and benefits, but to deny reinstatement as unworkable in view of Greene's misconduct after her discharge and at the arbitration hearing. The arbitrator expressly found that Greene's lies at the hearing had caused the employer-employee relationship to deteriorate "to the point where it is no longer viable because the grievant cannot be trusted." *See Misco,* 484 U.S. at 37–38, 108 S.Ct. 364 (holding that an arbitrator has broad authority in fashioning a remedy; courts have no authority to disagree with the honest judgment of arbitrators in determining remedies for CBA violations); *Sheet Metal Workers,* 84 F.3d at 1190 (holding that an arbitrator is entitled to great deference in interpreting the CBA; in fact, he is not bound even by precedent or the record before him). Hence, denying reinstatement was not unreasonable given the facts before the arbitrator and the deference that we owe to arbitrators' judgments.

■ Furthermore, contrary to the Union's assertion, industrial common law also supports consideration of post-termination conduct in deciding an appropriate reme-

dy, even if the employee was initially fired without proper cause. *See Columbus Show Case Co.,* 44 Lab. Arb. 507, 514 (1965) (Kates, Arb.). In *Columbus,* the arbitrator ruled that an employee was terminated without just cause, but denied a portion of his backpay because of the employee's post-discharge misconduct in swearing at his supervisor. *See id.; see also American Bldg. Maintenance Co.,* 58 Lab. Arb. 385 (1972) (McDonald, Arb.) (in fashioning an appropriate remedy, the arbitrator considered the fact that the employee had accepted employment elsewhere after his discharge).

■ The Union's position regarding the "sensible" alternative to the arbitrator's determination also is contradicted by common sense. The Union urges that the arbitrator should have ordered Greene's reinstatement and then allowed Rexam to immediately fire her (a second time) for her conduct. As the district court noted, ordering reinstatement for the sole purpose of terminating an employee again "would constitute an exercise in futility" and is not required. Moreover, the Union's option runs counter to national labor policy, which favors quick resolution of labor disputes outside the courtroom. *See Misco,* 484 U.S. at 38, 108 S.Ct. 364.

**2. Did the arbitrator's award "draw its essence" from the CBA?**

■ The Union further claims that the arbitrator's award should be vacated because it failed to "draw its essence" from the parties' CBA. "As long as the award 'draws its essence' from the contract, ... then the courts must enforce" the award and defer to the arbitrator's interpretation of the issues submitted. *See Sheet Metal Workers,* 84 F.3d at 1190.

■ Although well-established labor law provides that an arbitration award must draw its essence from the CBA, that means only that the arbitrator's determination must be a "plausible interpretation" of the CBA. *See id.; see also Roadway*

*Express,* 152 F.3d at 1100. The arbitrator's decision need not be the *only* possible interpretation. The Supreme Court has held that, when a CBA can be read in a manner consistent with the arbitrator's interpretation, it is not the job of the courts to second-guess arbitrators. *See Misco,* 484 U.S. at 38, 108 S.Ct. 364.

The Union's argument for an alternative interpretation is not persuasive in view of applicable Ninth Circuit and Supreme Court precedent. Arbitrators are granted wide latitude to fashion remedies appropriate to the situations they confront. *See Sheet Metal Workers,* 84 F.3d at 1190; *Misco,* 484 U.S. at 37–38, 108 S.Ct. 364. Arbitrators have broad authority to render decisions even on different theories than the parties advance. The *Sheet Metal Workers* court went so far as to say that an arbitrator's award does not violate the "essence of the CBA" even if it goes beyond precedent or the record before her. *Id.* Rather, industrial common law, the practices of the industry and shop, are *equally part of the CBA although not expressed in it. Id.* (emphasis added). As the arbitrator here made clear, common law supports awarding backpay to the grievant while denying reinstatement based on post-termination conduct. *See, e.g., Safeway Stores, Inc.,* 64 Lab. Arb. 563 (1974) (Gould, Arb.); Koven and Smith, *Just Cause, The Seven Tests,* at p. 438 n. 194.

Finally, the CBA at issue here could have limited the arbitrator's remedial authority if the parties had desired to do so at the time of contracting, but it contained no such restrictions. In the absence of any limitation, the Union cannot now argue that the arbitrator's award failed to draw its essence from the CBA. *See Pack Concrete,* 866 F.2d at 285, 286 n. 4 (as long as "the award represents a plausible interpretation of the [CBA], judicial inquiry ceases and the award must be enforced"; parties are free to prevent misinterpretation of a claim by setting their own procedural rules for arbitrators to follow). As Rexam points out, the Union did not complain that the arbitrator "read into the CBA a number of procedural protections" for employees when deciding that Greene's termination was not supported by just cause. It is incongruous for the Union then to argue that the arbitrator went beyond the CBA in handing down its decision considering Greene's post-termination conduct in determining a proper remedy.

## CONCLUSION

The parties entered into a CBA to ensure, *inter alia,* the speedy resolution of labor disputes through an agreed-upon arbitration process. The arbitrator handed down a reasoned decision that supported Greene's first charge contesting the propriety of her discharge, but which limited the ultimate remedy. The parties bargained for and asked for this impartial and considered judgment. Simply because the result failed to meet Greene's expectations does not mean that the arbitrator exceeded the scope of the issues presented or failed to base her conclusion on the essence of the CBA.

AFFIRMED.