

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00281-CV

---

CITY OF ARLINGTON                                                        APPELLANT

V.

TIBOR KOVACS                                                              APPELLEE

----------

## FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 048-261269-12

----------

## OPINION

----------

### I. INTRODUCTION

An arbitrator reinstated the employment of Appellee Tibor Kovacs after he was terminated by Appellant City of Arlington for violating numerous personnel rules. The issue we consider in this appeal is whether the arbitrator, in determining whether Kovacs violated the personnel rules as charged, exceeded his authority by relying on evidence of events that occurred after the City terminated Kovacs. Because the City's personnel manual limited the extent to

which the arbitrator could consider post-termination evidence and because the arbitrator's written decision confirms that he improperly considered post-termination evidence in determining whether Kovacs violated personnel rules as charged, we hold that the arbitrator exceeded his authority to resolve the dispute. Accordingly, we will reverse and remand.

## II. BACKGROUND

Kovacs went to work for the Arlington Police Department after attending the police academy in 2003. On October 28, 2010, A.K. reported to Arlington police that she was driving her vehicle at around 10:00 p.m. the previous night when a police officer—Kovacs—stopped her. Kovacs told A.K. that he thought she had been drinking, and A.K., who had consumed one "Four Loko," was feeling tipsy, and had an outstanding warrant for her arrest, thought she was going to jail. A.K. pleaded with Kovacs not to arrest her and told him that a friend lived nearby. After running A.K.'s information, Kovacs instructed her to leave her car in the parking lot and to get into the back seat of his police cruiser. On the way to the neighborhood where A.K.'s friend lived, Kovacs stopped the vehicle in a neighborhood that was unfamiliar to A.K. and allowed her to move to the front seat. After Kovacs continued driving, he placed his hand on A.K.'s thigh and digitally penetrated her vagina.[1] Kovacs received a personnel complaint that informed him of the personnel rules that he had allegedly violated and the nature

---

[1]A.K. said in her statement that she was wearing a short denim dress and no panties.

2

of the complaint. On November 1, 2010, Kovacs was placed on administrative leave pending an investigation by internal affairs.

On December 31, 2010, while Kovacs was still on administrative leave, his fiancée, M.H., reported to Cedar Hill police that Kovacs had awakened her by saying, "It's time to suck my d—k, b---h." M.H. told Kovacs not to speak to her like that, and Kovacs put her in a leg lock, shoved her head into a pillow, and grabbed her forearms until she bruised. Authorities charged Kovacs with assault–family violence, and a warrant issued for his arrest.

Several weeks later, on January 19, 2011, M.H. reported to Cedar Hill police that Kovacs had pinned her down and attempted to force her to perform a sexual act on him. She also reported that Kovacs had made several retaliatory statements against Arlington and Cedar Hill police officers. Cedar Hill police arrested Kovacs that same day for assault–family violence and additionally charged him with two counts of obstruction/retaliation and one count of attempted sexual assault.[2]

On January 21, 2011, acting police chief Will Johnson notified Kovacs that he was being dismissed. The memorandum identified three separate charges

---

[2]On January 19, 2011, Kovacs acknowledged receiving (i) a personnel complaint regarding the allegation that he had assaulted M.H. on December 31, 2010; (ii) a personnel complaint regarding the charges for sexual assault and obstruction/retaliation; and (iii) an amended personnel complaint regarding the incident with A.K. The amended complaint stated in part, "It is alleged that you used poor judgment when you decided not to arrest the female citizen and placed the female in your patrol car to give her a ride to her friend's house." It also stated, "It is . . . alleged that you did not properly accurately reflect your status via MDT or radio."

and the specifications for each charge. Specifically, Charge 1 alleged a violation of section 201.11.A of the City's Personnel Manual—"Unbecoming Conduct and Conduct Prejudicial to Good Order." The four specifications included Kovacs having been arrested for assault–family violence; having been arrested and charged with retaliation against Arlington and Cedar Hill police officers; having been charged with sexual assault against M.H.; and having agreed to drive A.K. to a friend's house instead of arresting her, allowing A.K. to sit in the front seat of his police cruiser, and inserting his finger into A.K.'s vagina while she was in the front seat. Charge 2 alleged a violation of section 201.02.A of the City's Personnel Manual—"Conformance to Laws." The single specification was that an arrest warrant had issued for Kovacs for assault–family violence against M.H and that Kovacs was arrested on the warrant. Charge 3 alleged a violation of section 201.04.B of the City's Personnel Manual—"Judgment." The single specification relied upon events involving A.K.—Kovacs had failed to arrest a person who he suspected had operated a vehicle under the influence of alcohol, transported the person to a residence while on duty, and allowed the person to move from the rear seat of the police cruiser to the front seat.

On January 25, 2011, Kovacs's attorney denied the charges against Kovacs and requested that Chief Johnson reconsider his decision, which he declined to do. After Kovacs's administrative appeal was denied, he requested that the decision to terminate him be reviewed by arbitration.

The parties eventually proceeded to arbitration, and the arbitrator issued a written decision. Therein, the arbitrator acknowledged that he was limited by the City's personnel manual to determining "(1) whether the employee violated the personnel rules, *as charged*, and (2) whether the disciplinary action as imposed is reasonable." [Emphasis added.] The "Background" section of the written decision includes the following statements:

•Feb. 28, 2011 [M.H.] testifies in her Protective Order Hearing seeking protection from Kovacs.

•Mar. 2, 2011 Kovacs was No Billed by the Dallas County Grand Jury on all four Felony charges regarding family violence, attempted sexual assault, and the two retaliation charges. [M.H.] was the complainant in the family violence and the attempted sexual assault charges and she was the sole witness in the retaliation cases.

•In criminal cases the Grand Jury must find probable cause to true bill someone. They did not find probable cause in the charges against Kovacs.

•Mar. 7, 2011 The Judge in the Protective Order Hearing denied the issuance of a Protective Order.

•Apr. 12, 2011 [A.K.] signed an undated Affidavit of Non-Prosecution regarding the events of October 27, 2010.

The "Discussion" section of the decision set out the same information regarding the no-bills by the grand jury, the denial of the protective order, and the affidavit of non-prosecution.

As to the allegations involving M.H., which included the assault–family violence, sexual assault, and retaliation charges, the arbitrator determined that "the City did not establish by a preponderance of the evidence[] Kovacs' involvement in" those charges. As to the allegations involving A.K., the arbitrator

5

determined that "the City did not establish by a preponderance of the evidence that Kovacs was sexually inappropriate with" her. The arbitrator did, however, determine that Kovacs "broke several City rules when he allowed [A.K.] to ride in the front seat of his patrol car, did not search her for a weapon, and failed to enter his mileage with the dispatcher." Concluding that "[t]he City did not prove the violations of all personnel rules as Charged and therefore the discipline of termination that was imposed for the proven violations was not reasonable[,]" the arbitrator determined that Kovacs should be reinstated, given a twenty-day suspension, and awarded back pay.

As permitted by the City's personnel manual,[3] the City filed a petition in district court seeking, among other things, to vacate the award on the ground that the arbitrator exceeded his authority by relying on evidence that was not available at the time that Kovacs was discharged—the no-bills by the grand jury, the denial of the protective order, and the affidavit of non-prosecution. Aside from determining that Kovacs was not entitled to back pay for the time that he was incarcerated, the trial court confirmed the award. The trial court issued findings of fact and conclusions of law, concluding in relevant part that "the error, if any, in considering the non-prosecution affidavit and/or the no bill by the Dallas Grand Jury was not a serious error or that i[t] was a basis for the decision of the

_____

[3]The manual states in relevant part that "[a] state district court may set aside an Arbitrator's decision only on the grounds that the Arbitrator was without jurisdiction or exceeded his/her authority, or that the decision is manifestly a violation of law."

6

arbitrator that Arlington had failed to support its claims with a preponderance of the evidence."

### III. POST-TERMINATION EVIDENCE

In its first issue, the City argues that the arbitrator—in deciding that Kovacs did not violate the personnel rules as charged regarding the allegations involving M.H. and the sexually-related allegation involving A.K.—exceeded his authority by improperly relying on evidence that did not exist when the City terminated Kovacs's employment on January 21, 2011—specifically, evidence (i) that the jury no-billed the two assault charges involving M.H. and the two retaliation charges involving the Arlington and Cedar Hill police officers, (ii) that a judge denied M.H.'s request for a protective order, and (iii) that A.K. signed an affidavit of non-prosecution regarding the events of October 27, 2010. Kovacs responds that the arbitrator was required to consider the post-termination evidence.[4]

We review a trial court's decision to confirm or to vacate an arbitration award de novo. *Pettus v. Pettus*, 237 S.W.3d 405, 418 (Tex. App.—Fort Worth

---

[4]Kovacs initially argues that the City failed to preserve this issue for review because it did not object when the complained-of evidence was elicited during the arbitration. However, the City advised the arbitrator at the outset of the arbitration proceeding that it had to prove that the policy violations occurred as alleged "given the facts available to the decision-maker at the time the discipline was imposed." Moreover, "[f]or efficiency's sake, arbitration proceedings are often informal; procedural rules are relaxed[] [and] rules of evidence are not followed." *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 101 (Tex. 2011); *see Gulf Coast Indus. Workers Union v. Exxon Co.*, 991 F.2d 244, 255 n.12 (5th Cir.), *cert. denied*, 510 U.S. 965 (1993) ("But given that arbitrators typically receive evidence liberally and do not feel constrained by strict applications of the rules of evidence, Exxon is not precluded from arguing this point on appeal in a *de novo* review."). The issue is therefore properly before us.

7

2007, pet. denied). We indulge every reasonable presumption in favor of the arbitrator's decision. *Id.*

Arbitration of disputes is strongly favored under state and federal law. *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (orig. proceeding). Therefore, judicial review of an arbitration award is extraordinarily narrow. *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). The review focuses on the integrity of the *process*, not the propriety of the *result*. *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 446 S.W.3d 58, 75 (Tex. App.—Houston [1st Dist.] 2014, pet. abated). Thus, even a mistake of fact or law by the arbitrator is not a proper ground for vacating an award. *Id.*

An arbitrator derives his authority to decide a dispute from the arbitration agreement. *Nafta Traders*, 339 S.W.3d at 90. Therefore, the scope of an arbitrator's authority depends on the arbitration agreement, and an arbitrator exceeds his authority when he decides a matter that is not properly before him. *See Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 143, 327 S.W.2d 406, 408 (1959); *Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 104 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also* 9 U.S.C.A. § 10(a)(4) (West 2009) (allowing district court to vacate arbitration award if arbitrator exceeded his powers); Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A) (West 2011); (same).

Several federal courts have addressed this very issue. In *Gulf Coast*, Exxon fired Woods for violating its alcohol and drug use policy, breaching an after-care agreement, and failing to report a relapse. 991 F.2d at 247. Woods's

8

union filed a grievance contesting the termination, and a single issue was submitted to an arbitrator: "Was [Woods] discharged for just cause and, if not, what is the proper remedy?" *Id.* at 247. In determining that Woods's discharge was unjustified, the arbitrator "considered and relied upon several assertions regarding Woods's post-discharge behavior, including (1) his post-relapse drug and alcohol abstinence, (2) his ability to hold a job, and (3) his realization that he must live 'one day at a time.'" *Id.* at 255. Based on this post-termination evidence, the arbitrator concluded that Woods "represented 'a good bet for successful rehabilitation so that discharge is not justified at this point in his treatment.'" *Id.* The Fifth Circuit held that the arbitrator's reliance upon circumstances regarding Woods's post-discharge rehabilitation efforts—in determining whether Woods was discharged for just cause—"was a departure from [the arbitrator's] authority under the contract." *Id.* at 257. It explained,

> Arbitrator Helburn was presented with this stipulated issue: "Was [Woods] discharged for just cause and, if not, what is the appropriate remedy?" The first part of the question is worded in the past tense. It is equivalent to asking, "Did Exxon possess just cause on June 15, 1990 to terminate [Woods]?" Upon a careful review of the applicable legal principles and the terms of the parties' collective bargaining agreement, which strips the arbitrator of authority "to alter or add to it in any way," we hold that the arbitrator should have confined his considerations only to the facts as they existed at the time Exxon made its termination decision.

*Id.* at 256.

In *Association of Western Pulp & Paper Workers, Local 78 v. Rexam Graphic, Inc.*, Greene was fired for leaving work without permission, her Union filed a grievance, and the case was submitted for arbitration. 221 F.3d 1085,

9

1087 (9th Cir. 2000). The issue to be considered by the arbitrator was framed as follows: "Was [Greene] terminated for just and sufficient cause, as required by the collective bargaining agreement? If not, what is the appropriate remedy?" *Id.* at 1089. The arbitrator determined that Rexam had acted without just cause in discharging Greene, but based on Greene's post-termination conduct and untruths, the arbitrator awarded Greene only back pay and benefits to the date of the hearing instead of directing that she be reinstated. *Id.* at 1087. On appeal, the Union objected to the arbitrator's consideration of Greene's post-termination conduct. *Id.* at 1089. The Ninth Circuit agreed with the Fifth Circuit's reasoning in *Gulf Coast* that "post-termination conduct should not be used to determine whether the employer had just cause for the termination," but it concluded that the arbitrator did not exceed her authority because she did not consider the post-termination evidence in determining whether Rexam had *just cause* to fire Greene but as a discrete issue relating only to the appropriate *remedy*. *Id.* at 1089–90. Indeed,

> [The arbitrator] did not let Greene's dishonesty influence her initial decision regarding whether Greene had been terminated for just cause, as evidenced by the very fact that she first ruled *against* Rexam on this threshold issue. However, the arbitrator then decided to award [back pay] and benefits, but to deny reinstatement as unworkable in view of Greene's misconduct after her discharge and at the arbitration hearing.

*Id.* at 1090. The Ninth Circuit reasoned that arbitrators appropriately consider post-termination evidence for purposes of devising a remedy, but not for determining just cause to terminate, because such evidence "allows arbitrators to

10

craft common-sense remedies responsive to all of the circumstances surrounding the case presented to them." *Id.*; *see United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.8, 108 S. Ct. 364, 371 n.8 (1987) ("Labor arbitrators have stated that the correctness of a discharge 'must stand or fall upon the reason given at the time of discharge,' . . . , and arbitrators often, but not always, confine their considerations to the facts known to the employer at the time of the discharge.").

We agree with the reasoned approach utilized by the federal courts, but only to the extent that it is consistent with the authority bestowed upon the arbitrator *by the arbitration agreement*. *See Nafta Traders*, 339 S.W.3d at 90. For example, the initial inquiry in both federal cases—as specified by the respective agreements—was whether the employer had just cause to terminate the employee. As the federal courts rightly concluded, post-termination evidence has no bearing whatsoever on that inquiry, and an arbitrator exceeds his authority when he considers such evidence in that context.

The inquiry in this case is a little different. The City's personnel manual specifically limited the authority of the arbitrator to determining "1) whether the employee violated the personnel rules, *as charged*, and [if so] 2) whether the disciplinary action as imposed is reasonable." [Emphasis added.] Regarding the first inquiry, *as charged*, the City's first Charge specified that Kovacs violated personnel rule 201.11.A because (1) he was "arrested" for assault–family violence, (2) he was "arrested and charged" with retaliation against two police

11

officers, (3) he was "charged" with sexual assault, and (4) he "put [his] finger in [A.K's] vagina while she was sitting in the front seat" of his police cruiser. Like the just-cause inquiry in the federal cases, logic alone mandates that post-termination evidence has no relevance as to whether Kovacs was *arrested*, *arrested and charged*, or *charged*, but it could potentially have some relevance as to the fourth specification, which is a significantly more detailed inquiry. Thus, in terms of the Charge that Kovacs violated personnel rule 201.11.A, the City's personnel manual expressly prohibited the arbitrator from considering post-termination evidence for purposes of specifications (1), (2), and (3) (involving M.H.) but not (4) (involving A.K.).[5]

Turning to whether the arbitrator actually considered post-termination evidence, the arbitrator's written decision states twice (i) that a grand jury had no-billed the four felony charges against Kovacs and witnessed by M.H. and (ii) that a trial court had denied M.H.'s request for a protective order. Referencing these excerpts during a hearing, the trial court (in this case) stated, "He [the arbitrator] puts this in the opinion. We know he relied on it." There can be no doubt that the arbitrator considered this post-termination evidence in reaching his decision. The question then is for what purpose did he consider it? Like the Ninth Circuit in *Rexam Graphic,* we must review the arbitrator's written decision to determine

---

[5]The same can be said for the City's second Charge—that Kovacs violated personnel rule 201.02.A because "a warrant was issued" for his arrest for assault–family violence and because he was "arrested" on the warrant, both allegations involving M.H.

12

whether the arbitrator considered the post-termination evidence for a proper purpose.

The arbitrator determined that "the City did not establish by a preponderance of the evidence[] Kovacs' involvement in the charges of [M.H.]." Therefore, regarding the first inquiry that the arbitrator was charged with deciding—whether the employee violated the personnel rules, as charged—the arbitrator concluded "No" as to the personnel rule violations that involved the allegations involving M.H. Because the arbitrator answered the first inquiry in the negative, there was no reason to consider the second inquiry as to the nonviolations—whether the disciplinary action as imposed was reasonable. Therefore, the post-termination evidence relevant to the allegations involving M.H. could not have been considered for that purpose.

Apparently sustaining Charge 3—that Kovacs violated personnel rule 201.04.B—the arbitrator determined that Kovacs "broke several City rules when he allowed [A.K.] to ride in the front seat of his patrol car, did not search her for a weapon, and failed to enter his mileage with the dispatcher." Therefore, regarding the first inquiry that the arbitrator was charged with deciding—whether the employee violated the personnel rules, as charged—the arbitrator concluded "Yes" as to several of the allegations contained in the specification for Charge 3. The arbitrator then proceeded to consider whether the disciplinary action as imposed was reasonable, but the arbitrator did not consider the post-termination evidence relevant to the allegations involving M.H. for that purpose. *Cf. Rexam*

13

*Graphic*, 221 F.3d at 1089–90 (reasoning that arbitrator considered post-termination evidence for purposes of determining remedy). Not only was the post-termination evidence involving M.H. not relevant to whether Kovacs "broke several City rules when he allowed [A.K.] to ride in the front seat of his patrol car, did not search her for a weapon, and failed to enter his mileage with the dispatcher," the arbitrator specifically concluded in his written decision that the disciplinary action imposed was not reasonable because the "City did not prove the violations of all personnel rules as Charged."

Finally, we determined above that post-termination evidence could be relevant to the fourth specification for the Charge that Kovacs violated personnel rule 201.11.A—the sexual conduct involving A.K. in Kovacs's police cruiser. However, the post-termination evidence relevant to that inquiry was that A.K. had executed an affidavit of non-prosecution, not that a grand jury no-billed the four felony charges against Kovacs or that a court denied M.H. a protective order, events related to an entirely different set of allegations.

The arbitrator's written decision thus confirms not only that he considered the post-termination evidence involving M.H. but also that he could only have considered it for an improper purpose—whether Kovacs violated the personnel rules as charged by being arrested for assault–family violence, arrested and charged for retaliation against two police officers, and charged with sexual assault, and by having a warrant issue for his arrest for assault–family violence, all allegations involving M.H. By considering the post-termination evidence, the

14

arbitrator improperly pursued an inquiry beyond the scope of the City's charging instrument, thus departing from his authority as clearly and unambiguously confined by the same document.

Kovacs argues that the arbitrator properly considered the challenged post-termination evidence because the arbitrator was tasked with determining whether Kovacs in fact *committed* the alleged conduct.[6] But that is not at all what was charged. As charged, the City alleged that Kovacs violated several personnel rules because he had been arrested, arrested and charged, and charged and because a warrant had issued for his arrest. The specifications for the disciplinary Charges did not allege that Kovacs violated the personnel rules because he "committed" the alleged offenses, was "indicted" for the alleged offenses, or was "convicted" of the alleged offenses. Kovacs's interpretation erroneously re-writes the wording of the City's charging instrument, and the arbitrator exceeded his authority if he construed the City's charging instrument as Kovacs advocates.

We hold that the arbitrator exceeded his authority as specified by the City's personnel manual by improperly considering post-termination evidence in determining whether Kovacs violated the City's personnel rules as charged. *See Nafta Traders*, 339 S.W.3d at 90; *Gulf Oil Corp.*, 160 Tex. at 143, 327 S.W.2d at

---

[6]Kovacs thus concedes that the arbitrator considered the post-termination evidence in deciding the allegations involving M.H.

408.  We sustain the City's first issue and do not reach its second and third issues.  *See* Tex. R. App. P. 47.1.

## IV. CONCLUSION

Having sustained the City's first issue, we reverse the trial court's judgment confirming the arbitration award and remand this cause to the trial court for further proceedings.


/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DELIVERED:  August 13, 2015

16