RICHARD L. PRESTON *v.* PHELPS DODGE COPPER
PRODUCTS COMPANY
(11818)

FOTI, LANDAU and SPEAR, Js.

Argued January 12—decision released September 6, 1994

*John W. Powers,* with whom were *Ronald Lasky, Theodore Stamatakos* and, on the brief, *Otto P. Witt,* for the appellant (defendant).

*Barry J. Ward,* with whom, on the brief, was *Gilbert Shasha,* for the appellee (plaintiff).

FOTI, J. The defendant appeals from the trial court's judgment, rendered after the jury verdict in this wrongful discharge action, awarding the plaintiff $246,000 for back pay, future wage loss and impairment of earning capacity, $50,000 for infliction of emotional distress, and $500,000 in punitive damages.

The plaintiff, Richard L. Preston, brought an action against his former employer, Phelps Dodge Copper Products Company (Phelps) in a five count complaint that alleged (1) wrongful discharge in violation of public policy, (2) breach of an implied covenant of good faith and fair dealing, (3) breach of an implied employment contract, (4) fraud, and (5) intentional infliction of emotional distress. The trial court granted Phelp's motion for a directed verdict as to the fourth count, and the jury answered eight separate interrogatories in finding for the plaintiff on all other counts. The jury also found that Phelps' conduct was "malicious and outrageous" and motivated by bad faith and, accordingly, awarded punitive damages.

The trial court rendered judgment in accordance with the verdict on October 1, 1992. On October 8, 1992, Phelps filed a motion to set aside the verdict and a motion for remittitur. On November 9, 1992, the trial court heard arguments and denied the motion to set aside because it was untimely filed. The court also

granted, in part, the motion for remittitur. The court found the verdict as to punitive damages to be excessive and ordered that part of the judgment set aside unless within fourteen days the plaintiff filed a remittitur of $347,000[1] with the court. The plaintiff timely filed the remittitur and the court ordered that judgment be entered for the plaintiff in the amount of $449,000[2] in damages plus reasonable costs.

Phelps claims on appeal that the trial court improperly (1) instructed the jury and (2) ordered a remittitur for an insufficient sum.[3] Phelps also claims that the evidence was insufficient to sustain the jury's verdict. We reverse the trial court's judgment in part.

The jury reasonably could have found the following facts. In December, 1981, Phelps, a company involved in metallurgy, hired the plaintiff as a technician in its quality assurance laboratory. In January, 1988, the plaintiff was assigned additional duties as laboratory safety and maintenance coordinator. On a few occasions, the plaintiff reported unsafe conditions or a breach of safety procedures. He also reported falsification of data as to certain copper "contamination" of production liquids, and an apparent cover-up of a safety breach. On June 15, 1989, the plaintiff was discharged because of his persistent complaints about safety. He was called into the office of the personnel manager and told that his job had been eliminated and that he was

[1] This represents a reduction in damages from $500,000 to $153,000.

[2] There appears to be a typographical error in the judgment file that reads "$499,000 in damages." The correct figure, mathematically, is $449,000, as noted by the court at the hearing on the remittitur.

[3] General Statutes § 52-228a provides: "In any jury case where the court orders a decrease in the amount of the judgment or an increase in the amount of the judgment, the party aggrieved by the order of remittitur or additur may appeal as in any civil action. The appeal shall be on the issue of damages only, and judgment shall enter upon the verdict of liability and damages after the issue of damages is decided."

being laid off. He was offered severance pay of $3400 if he would sign a covenant not to sue. The plaintiff refused to sign the agreement and left the plant.

Following his discharge, the plaintiff became extremely depressed and often sat silently for hours, oblivious to his surroundings. His relationship with his wife and children became strained and distant and he consulted a psychologist. After a year of unemployment and low paying and unsatisfying jobs, he found employment at Olin Metals Research in New Haven. This job involved a daily roundtrip commute of 128 miles compared to six miles to Phelps.

Following the plaintiff's discharge, Phelps discovered an incident of prior misconduct by the plaintiff while he was still employed. In August, 1988, because of his frustration and anger with his employer, the plaintiff had entered the restroom used by the plant manager and the personnel manager and put poison ivy on the toilet seat and stall. The plaintiff then informed three of his friends as to what he had done, warning them not to use the toilet. The plaintiff felt this was his way of getting back at management. As a result, the plant manager, who is highly allergic to poison ivy, developed a severe reaction that took more than two months to cure.

I

There are two threshold matters that we must determine. We must decide whether this appeal is taken from a final judgment and, if so, what is the appropriate standard of review.

The plaintiff argues that Phelps did not appeal from a final judgment because it appealed from the judgment and not the action by the court following the motion for remittitur. Alternatively, he claims that if the judgment was final, then Phelps should not be allowed to

obtain review of the action by this court on the motion for remittitur because Phelps failed to amend its appeal to include the postjudgment remittitur order.

"The lack of a final judgment implicates the authority of this court to hear the appeal because it is a jurisdictional defect." *Mac's Car City, Inc.* v. *DiLoreto,* 33 Conn. App. 131, 132, 634 A.2d 1187 (1993). "Once the question of lack of jurisdiction of a court is raised, it must be disposed of no matter in what form it is presented." (Internal quotation marks omitted.) *Cross* v. *Hudon,* 27 Conn. App. 729, 732, 609 A.2d 1021 (1992).

It is obvious that a final judgment was rendered on October 1, 1992. A judgment rendered following the jury verdict finally resolved the dispute that gave rise to this litigation. The filing of the motion for remittitur by Phelps had no effect on the finality of that judgment. The subsequent granting of that motion did not set aside the previously rendered final judgment and thereby vacate it for appeal purposes. Rather, the court ordered only that the judgment on punitive damages would be set aside if the plaintiff failed to file a remittitur in the amount specified by the court. The judgment itself was not disturbed by the timely filing of the remittitur; the amount of the judgment was merely modified.[4]

We also conclude that Phelps need not have amended its appeal form to include the order granting its motion for remittitur in part and denying it in part. Phelps' motion for remittitur claimed that the award by the jury was excessive. On appeal, Phelps argues that the amount of the reduction ordered by the trial court in

---

[4] Compare *Paranteau* v. *DeVita,* 208 Conn. 515, 523, 544 A.2d 634 (1988) (holding that postjudgment hearing on attorney's fees did not affect finality of judgment) with *Balf Co.* v. *Spera Construction Co.,* 222 Conn. 211, 214–15, 608 A.2d 682 (1992) (refusing to extend *Paranteau* to a supplemental determination of prejudgment interest).

granting the remittitur was not large enough. The claims both raise the same issue: that the amount awarded to the plaintiff was excessive. The claim was properly preserved and raised in the preliminary statement of issues. Phelps is entitled to appellate review.

Also as a preliminary matter, we must determine the appropriate standard of review. In order to have plenary review on appeal, an appellant must file a timely motion to set aside the verdict. Practice Book § 4185; *Small* v. *South Norwalk Savings Bank,* 205 Conn. 751, 758, 535 A.2d 1292 (1988). It has long been our law that unless a motion to set aside a verdict is filed, appellate review is limited "to ascertaining whether there has been 'plain error.' " *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 515, 441 A.2d 163 (1981). Plain error review "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). *Kolich* v. *Shugrue,* 198 Conn. 322, 326, 502 A.2d 918 (1986)." (Internal quotation marks omitted.) *Small* v. *South Norwalk Savings Bank,* supra, 759.

A motion to set aside a verdict must be filed with the trial court clerk within five days after the date the verdict is accepted or judgment is rendered. Practice Book § 320. In the present case, the motion to set aside was not filed within the prescribed five day period and, consequently, was denied as untimely. The issues on appeal, therefore, must be tested by the plain error standard.

The plain error standard, however, does not apply to any claim arising from the trial court's action on the motion for remittitur. *Goral* v. *Kenney,* 26 Conn. App. 231, 240, 600 A.2d 1031 (1991). We, therefore, afford

plenary review to Phelps' claims regarding the order of remittitur, and apply a plain error standard to all other issues.[5]

## II

Phelps claims that the trial court improperly instructed the jury by refusing to give its requested instruction regarding the after acquired evidence of the plaintiff's misconduct. Phelps argues that the instruction was improper because it may have related to the award of future lost wages, often commonly referred to as "front pay."[6] Phelps also alleges that the trial court improperly refused to instruct as requested on the definition of "extreme and outrageous" conduct and "severe mental distress."

## A

At trial, Phelps submitted a supplemental requested instruction on future wage loss as follows: "The plaintiff is claiming damages for future loss of income. In his testimony, [the] plaintiff gave his claimed amount of future loss. [The] [p]laintiff assumed that raises and overtime at Phelps Dodge would have remained con-

---

[5] Phelps argues that since the issues raised by its motion to set aside the verdict and its motion for remittitur are identical, it should be entitled to plenary review of the denial of either motion independently. Phelps does not, however, appeal from the trial court's denial of its motion to set aside the verdict. Effectively, no valid motion to set aside was filed in this case. Phelps is entitled only to plain error review on those issues.

[6] Front pay simply extends, for purposes of recovery under statutes prohibiting certain types of wrongful discharge, an employee's earnings estimates into the future. See, e.g., *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 478, 559 A.2d 1120 (1989); *Civil Service Commission* v. *Commission on Human Rights & Opportunities*, 195 Conn. 226, 230, 487 A.2d 201 (1985). It involves proof of at least the following elements: (1) remaining work life; (2) future increases in compensation on which pension benefits are based; (3) age at which retirement will occur; (4) life expectancy after retirement; and (5) discount rate to convert the stream of benefits to a present value lump sum. See *Buckley* v. *Reynolds Metals Co.*, 690 F. Sup. 211, 218–21 (S.D.N.Y. 1988).

stant for twenty-three years. As with all aspects of damages, the amount of damages must be reasonable. You are not permitted to award speculative damages, but only those which [the] plaintiff has proved by a preponderance of the evidence. [The] [p]laintiff offered no evidence for loss of fringe benefits, thus no amount should be included for any claimed loss of fringe benefits. Likewise, [the] plaintiff offered no evidence in support of his claimed loss of pension benefits, thus, no amount should be included for any claimed loss of pension benefits.

"In determining the claim for future loss of income, you must consider the likelihood of the plaintiff remaining at Phelps Dodge. In this regard, you may consider the effect that the 'poison ivy' incident may have had on the plaintiff's likelihood of remaining employed by Phelps Dodge."

The court refused to give any portion of the second paragraph of the tendered instruction.[7] Phelps noted its exception and in postjudgment motions again argued that the jury should have been allowed to consider whether the plaintiff had, because of the admitted misconduct, any likelihood of future employment with Phelps.

The issue is whether the jury should have been allowed to consider the plaintiff's misconduct, discov-

---

[7] The court instructed the jury that it could award damages to the plaintiff in the form of back pay, interest, future wage losses, and future loss of earning capacity for harm sustained by the plaintiff as a result of any wrongful termination. In particular, the court instructed with regard to future losses: "Now, in assessing damages for future losses, you must determine what amount, if any, the plaintiff has proved by the preponderance of the evidence he would receive if he continued in the employment of the defendant for the period in the future you determine he would remain in such employment less any sums that the plaintiff will, in reasonable probability, be able to receive by the exercise of reasonable diligence during such future period." The court gave no instruction as to what effect the poison ivy incident could have on damages.

ered by Phelps after his discharge, and to decide whether that misconduct limited any award for breach of contract damages. We conclude that the jury should have been instructed that it could consider the misconduct and that it was plain error for the trial court not to have instructed the jury as requested by Phelps.

The proper role of after acquired evidence as it affects damages for breach of a contract of employment raises an issue of first impression in Connecticut. Public policy would seem to disfavor compensating an employee for the loss of future wages, even though he was wrongfully discharged, when the employer proves by a fair preponderance of the evidence that it subsequently discovered evidence of employee misconduct that would have justified the termination of employment.

In the federal system, as a general rule, after acquired evidence is relevant to the relief due a successful plaintiff in an employment discrimination discharge case. *Johnson* v. *Honeywell Information Systems,* 955 F.2d 409 (6th Cir. 1992); *Summers* v. *State Farm Mutual Automobile Ins. Co.,* 864 F.2d 700 (10th Cir. 1988). If the after acquired evidence, in and of itself, would have caused the employer to discharge the employee, it would be inappropriate to order reinstatement of employment or front pay. *Wallace* v. *Dunn Construction Co.,* 968 F.2d 1174, 1181 (11th Cir. 1992). "[I]f [an employer] has a legitimate motive that would cause [an employee's] discharge, then . . . front pay would go beyond making [the employee] whole and would unduly trammel [the employer's] freedom to lawfully discharge employees. Because [the employee] would no longer be employed at [the employer's place of business], [he] also would not be entitled to an injunction against further unlawful practices." Id., 1182.

Applying this analysis to the present case, we conclude that although the poison ivy incident could not

have affected the employment relationship at the time of the discharge and, therefore the legality of that discharge, it could have affected the amount of future wages the plaintiff can recover. The prospective remedy of future wage loss, which the parties have labeled front pay, may be partially or totally unattainable, depending on when the after acquired evidence was discovered and how it would have affected the employment relationship. Id., 1181.

The determination of future earnings requires some degree of speculation as to how long the plaintiff would have continued working for Phelps. In order to obtain such prospective relief, it is the plaintiff's burden to prove, inter alia, that, but for the wrongful discharge, he would still be employed and that he would have remained with his employer for a period of years. If there is evidence presented that the employment might have been terminated legitimately, the trier of fact must determine the likely duration of employment with Phelps in order to award future wage loss.

The jury heard testimony concerning the plaintiff's misconduct. The court, therefore, must have found it to be relevant. The weight given to the testimony should have been left to the jury. It was for the jury to determine whether the poison ivy incident was, in fact, employee misconduct, and, if so, whether that misconduct was substantial enough to warrant the plaintiff's discharge for just cause. It was also the jury's function to determine when that discharge would have occurred, thereby limiting the plaintiff's entitlement to future wages.

We have not adhered to the terminology employed by the parties and the trial court, i.e., "front pay" and "back pay," in dealing with the damages for breach of a contract. This type of action for breach of a contract of employment must be distinguished from ter-

mination of employment actions brought pursuant to the Age Discrimination in Employment Act, or under Title VII in the federal court system. We are not bound to use concepts such as front pay or back pay, that are derived from statute, where, as here, no such statute is involved.

The general rule of damages in a breach of contract action is that the award should place the injured party in the same position as he would have been in had the contract been performed. *Vespoli* v. *Pagliarulo,* 212 Conn. 1, 3, 560 A.2d 980 (1989); *West Haven Sound Development Corp.* v. *West Haven,* 207 Conn. 308, 317, 541 A.2d 858 (1988); *Danpar Associates* v. *Somersville Mills Sales Room, Inc.,* 182 Conn. 444, 446, 438 A.2d 708 (1980). "[A] party may recover 'general' contract damages for any loss that 'may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself.' " *West Haven Sound Development Corp.* v. *West Haven,* 201 Conn. 305, 319, 514 A.2d 734 (1986), quoting *Hadley* v. *Baxendale,* 9 Ex. 341, 354, 156 Eng. Rep. 145 (1854).

When a wrongful termination of a contract is claimed, "the entire damage, both past and prospective, may be recovered in a single action." *Jacobs* v. *Thomas,* 26 Conn. App. 305, 314, 600 A.2d 1378 (1991), cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). The measure of damages is the reasonable compensation for the loss that the plaintiff suffered in being wrongfully deprived of the benefit of the agreement. *Maguire* v. *Kiesel,* 86 Conn. 453, 460, 85 A. 689 (1913). Our Supreme Court has stated that "[t]he normal rule on an employment contract is that when the employee is prevented from fully performing because the employer wrongfully fires him, the employee can recover the wages he *would have earned* under the contract, minus any wages which he has earned or could have earned

elsewhere, and the burden of proof of the latter is on the employer. *Carter* v. *Bartek,* 142 Conn. 448, 451–52, 114 A.2d 923 [1955]." (Emphasis added.) *Burns* v. *Gould,* 172 Conn. 210, 221, 374 A.2d 193 (1977). Wages one "would have earned" under the contract are the equivalent of future wage loss, often called "front pay."

Because we conclude that the trial court improperly refused to instruct the jury as requested concerning the after acquired evidence of the plaintiff's misconduct, a remand is required for a new trial limited to the issue of determining those damages, if any.[8]

B

Phelps also alleges that the trial court improperly refused to instruct as requested on the definitions of "extreme and outrageous" conduct and "severe mental distress," in regard to the count alleging infliction of emotional distress.[9]

---

[8] "Ordinarily the reversal of a jury verdict requires a new trial of all the issues in the case. 'Where the error as to one issue . . . is separable from the general issues, the new trial may be limited to the error found, provided that such qualification or limitation does not work injustice to the other issues or the case as a whole.' *Murray* v. *Krenz,* 94 Conn. 503, 507, 109 A. 859 (1920)." *DeLaurentis* v. *New Haven,* 220 Conn. 225, 268, 597 A.2d 807 (1991). The lack of instruction on after acquired evidence affects only the jury's determination of the length of time the plaintiff might have remained in the defendant's employment and, in consequence, the determination of damages for future losses. Accordingly, we conclude that no injustice will be done because the issues are not "inextricably interwoven." We, therefore, remand this case for a determination of the appropriate measure of damages only. See, e.g., *Vezina* v. *Nautilus Pools, Inc.,* 27 Conn. App. 810, 823–24, 610 A.2d 1312 (1992).

[9] The request to charge, as relevant, reads as follows: " 'Extreme and outrageous conduct' is defined as conduct that is heartless, flagrant and beyond all bounds usually tolerated by decent society. It is not enough for the plaintiff to prove that Phelps Dodge subjected him to indignities, annoyances or petty oppressions, nor is it sufficient for the plaintiff to demonstrate that Phelps Dodge's behavior resulted in hurt feelings. The plaintiff can only prevail on this claim if he can prove that Phelps Dodge engaged

The court instructed, as relevant to this issue, as follows: "To prove intentional infliction of emotional distress, the plaintiff must prove four things: first, the defendant intended to inflict emotional distress or that the defendant knew or should have known that emotional distress was likely to result from the defendant's conduct; second, the defendant's conduct was extreme and outrageous; third, the defendant's conduct was the cause of the plaintiff's emotional distress; and finally, the emotional distress sustained by the plaintiff was severe."

As to the calculation of damages the court instructed: "Intentional infliction of emotional distress is considered a tort claim. If an employer commits a tort, an employee is able to recover damages for any emotional distress he may have suffered. You may award dam-

---

in conduct that was so outrageous in character and so extreme in degree as to exceed all possible bounds of decency and be considered atrocious and utterly intolerable in a civilized community. . . .

"If the plaintiff is able to demonstrate that Phelps Dodge engaged in extreme and outrageous conduct, he still must establish that he suffered severe emotional distress. Severe emotional distress, for the purposes of this instruction, means emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it. The intensity and duration of the alleged distress and whether the plaintiff required medical treatment are factors which you should consider in determining whether the plaintiff has proved that he suffered severe emotional distress." (Citations omitted.)

No specific exception or argument was made following the charge given on this point. The record reflects that Phelps' counsel stated after the initial charge: "It is my understanding that if we submitted them [requests to charge] and you didn't give them, we have an automatic exception?" The court responded: "You may have an exception. Anything I didn't give, you may have an exception." In addition, in passing, the defense counsel noted, "With respect to the punitive damages instruction, again, it's the same problem I have with the instruction on intentional infliction of emotional harm. The punitive instruction says 'outrageous conduct' and the Court has not defined outrageous conduct for the jury. . . ." Following a request from the jury, the court reread its charge dealing with the claim of intentional infliction of emotional distress. Phelps' counsel, when asked if there were "[a]ny exceptions on the reread," replied: "No, Your Honor, no exception."

ages in an amount which will reasonably compensate the plaintiff for any loss or harm he has suffered, provided that you find proven by the preponderance of the evidence that such loss or harm was suffered by him and was proximately caused by the defendant's actions. The amount of such award shall include reasonable compensation for any pain, discomfort, fears, humiliation, anxiety and other emotional loss suffered by the plaintiff.''

"[T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Jury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Citations omitted; internal quotation marks omitted.) *Preston* v. *Keith,* 217 Conn. 12, 17, 584 A.2d 439 (1991).

The tort of intentional infliction of emotional distress requires proof of four elements: (1) that the actor intended to inflict emotional distress; or that he or she knew or should have known that emotional distress was a likely result of his or her conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan* v. *Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986).

In the context of the court's entire charge concerning the intentional infliction of emotional distress, we conclude that the jury was adequately informed as to the correct law and the instruction given was sufficient for guidance to a just determination of the issues presented.

## III

Phelps next alleges that the trial court's order of remittitur was insufficient. Phelps asserts that a total reduction of the $500,000 punitive damages award was justified because there was no evidentiary basis to sustain any such award. Phelps acknowledges that the trial court granted its motion for remittitur to "the maximum allowable" in punitive damages under *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 280, 472 A.2d 306 (1984).

"When a verdict is excessive as a matter of law, the amount of the remittitur . . . rests largely within the discretion of the trial court. 'Its action is entitled to full support unless it abuses its discretion.' *Allen* v. *Giuliano,* 144 Conn. 573, 578, 135 A.2d 904 (1957). 'In determining whether the trial court abused its discretion, we must make every reasonable presumption in favor of the correctness of its action.' *Brooks* v. *Singer,* 147 Conn. 719, 720, 158 A.2d 745 (1960)." *Alfano* v. *Insurance Center of Torrington,* 203 Conn. 607, 614, 525 A.2d 1338 (1987).

On the basis of this record, we cannot conclude that the trial court abused its discretion by refusing to order the remittitur in a greater amount.[10]

---

[10] Phelps' motion for remittitur also claimed that the award for back pay and future pay was excessive. The record indicates that following the trial court's action in granting the motion for remittitur as discussed, the defendant inquired: "It is my understanding that you are going to deny the remittitur with respect to the excessiveness of the back pay and future pay." The court responded: "That's a jury issue and there was evidence which the jury chose to believe. Again, not that the court would have accepted the evidence. The court doesn't sit as a seventh juror. But, the jury chose to accept the evidence that [was presented] to them. They could make the award. I could say for the record that I am surprised, but, I wasn't shocked. I was surprised, but, not shocked."

We find it unnecessary to address this issue because of our remand discussed in part II.

## IV

Lastly, Phelps claims that the evidence was insufficient to sustain the jury's verdict. General Statutes § 52-228b[11] requires a motion to set aside a verdict when the claim on appeal relates to the sufficiency of the evidence; *Saporoso* v. *Aetna Life & Casualty Co.,* 221 Conn. 356, 361, 603 A.2d 1160 (1992); and, as discussed in part I, that necessarily means a timely filed motion to set aside. Strict compliance with § 52-228b is a prerequisite to plenary review of claims on appeal. *Falby* v. *Zarembski,* 221 Conn. 14, 22, 602 A.2d 1 (1992). Phelps' failure to file a timely motion to set aside a verdict limits our consideration of the issue to plain error. *Kelly* v. *Bonney,* 221 Conn. 549, 559, 606 A.2d 693 (1992).

Phelps' claims of insufficiency of the evidence do not qualify for the exercise of our discretionary authority under the plain error rule. Practice Book § 4185. As previously discussed, review for plain error is reserved for extraordinary situations. See part I. Phelps' contentions that the evidence could not have allowed a reasonable jury to conclude that its conduct was extreme and outrageous, or that the plaintiff suffered severe emotional distress, are without merit.[12] Our review of the whole record, including the transcript, leads us to

---

[11] General Statutes § 52-228b provides: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

[12] Phelps also claims that the evidence was insufficient to support the jury's award. We need not address this claim. See part I.

conclude that none of Phelps' claims involving the sufficiency of the evidence satisfies the standard of plain error review.

The judgment is reversed in part and the case is remanded for a new trial limited to the issues involving the determination of the contractual damages, if any.

In this opinion SPEAR, J., concurred.

LANDAU, J., concurring. I concur with the result reached by the majority. I respectfully disagree, however, with the language of the analysis in part II A of the opinion.

In that section, the majority concludes that the trial court improperly refused to instruct the jury on the issue of after acquired evidence pertaining to the plaintiff's misconduct. The majority appropriately reaches this conclusion by adopting the reasoning of federal jurisdictions in the relief awarded successful plaintiffs in a succession of cases grounded in employment discrimination discharge cases brought pursuant to statutory entitlement. See *Wallace* v. *Dunn Construction Co.,* 968 F.2d 1174 (11th Cir. 1992); *Johnson* v. *Honeywell Information Systems, Inc.,* 955 F.2d 409 (6th Cir. 1992); *Summers* v. *State Farm Mutual Automobile Ins. Co.,* 864 F.2d 700 (10th Cir. 1988).

While the analogy is appropriate, and thus persuasive, the language employed by the majority creates possible confusion by its use of the terms "future wage loss" and "front pay." The majority neither acknowledges nor directs attention to the nuda veritas that there is a distinction between the two terms. It correctly states that in an action sounding in common law contract, the measure of damages is reasonable compensation for the loss that the plaintiff suffers in being wrongfully deprived of the benefit of the agreement;

*Maguire* v. *Kiesel,* 86 Conn. 453, 460, 85 A. 689 (1913); and "the entire damage, both past and prospective, may be recovered in a single action." *Jacobs* v. *Thomas,* 26 Conn. App. 305, 314, 600 A.2d 1378 (1991), cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). Although "front pay" damages are permitted as a federal statutory remedy in an action claiming wrongful discriminatory practices; see 42 U.S.C. § 2000e-5 (g); and may be allowed in a comparable state action; see General Statutes § 46a-60; *State* v. *Commission on Human Rights & Opportunities,* 211 Conn. 464, 559 A.2d 1120 (1989); *Civil Service Commission* v. *Commission on Human Rights & Opportunities,* 195 Conn. 226, 487 A.2d 201 (1985); it should be appropriately regarded as just that, a statutory remedy, and not seemingly casually interchanged with "future lost wages," a common law breach of contract remedy.

The majority's utilization of the nomenclature "front pay" to indicate recovery for future lost wages in an action based on a claim of wrongful termination alleging a breach of contract, in my judgment, incorrectly implies that we recognize "front pay" damages as a viable remedy in that cause of action.