[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION TO VACATE ARBITRATION AWARD
I. NATURE AND HISTORY OF PROCEEDINGS:
Plaintiff, City of Torrington, (hereinafter referred to as the "city"), seeks to vacate an arbitration award issued by the State Board of Mediation and Arbitration, (hereinafter referred to as the "SBMA") dated November 1, 2000, in SBMA Case #9899-A-0981. The dispute before the panel of arbitrators (consisting of three members) appointed by the SBA and before this court arises out of the termination of one Mark Sevetz by the city on January 25, 1999, from his position as a building inspector. Upon termination, Sevetz filed a grievance pursuant to a collective bargaining agreement between the city and the defendant (hereinafter referred to as the "union") who then represented Sevetz in all further proceedings. Sevetz and the union claimed that the city's action was without the "just cause" required by the collective bargaining agreement in order to justify termination of employment.
Sevetz's grievance was processed through the various steps provided in the collective bargaining agreement which concluded with a hearing before the arbitration panel which was held over a five day period commencing September 21, 1999, and concluding on June 5, 2000, The panel found that Sevetz's termination was without just cause and ordered that he be reinstated to his municipal position with back pay. The award was issued CT Page 8492 on November 1, 2000.
Plaintiff filed the application to vacate said award on November 29, 2000, and returned the record to the court on May 18, 2001. Briefs were filed and oral argument thereon was made to this court on May 1, 2002.
II. FACTUAL BACKGROUND
Sevetz was hired by the city through an application process on April 21, 1997, and worked under the supervision of the city's building official until his termination twenty-one months subsequent to hire. In June, 1998, Sevetz was disciplined for approving an electrical installation for his friend in a town where Sevetz had no jurisdiction; he was given a verbal warning. Within fifteen days of that warning, Sevetz was ordered by the City's Personnel Director to follow all directives and work only his scheduled hours or face a charge of insubordination up to and including discharge. At the arbitration hearing the mayor of Torrington testified as to written and oral complaints from the public which questioned Sevetz's arrogant attitude, manners and unorthodox methods. Complaints were lodged against Sevetz by property owners as to his attitudes and tactics, threats and failure to keep inspection appointments. In addition, the secretary in the building department complained of harassment by Sevetz. There was further testimony before the panel, claimed by the union to be not credible, that Sevetz caused unrest in the city's building department by spying on co-workers, destroying communications and fabricating stories to make his co-workers look bad. Aside from the verbal warning and directive referred to above, however, no further disciplinary action was taken.
In December, 1998, the city received an anonymous phone call in which the caller claimed to have witnessed a large box placed in a city vehicle by an employee of a building contractor. This was followed by a sworn statement by a representative of a building contractor stating that he had provided Sevetz with a satellite dish as a gift. He decided to report this to city officials when Sevetz requested a pager as well. Sevetz denied all wrong doing when asked about the allegations by city officials. Nevertheless, he was terminated on January 25, 1999. His termination was upheld by the city's personnel committee at that step in the grievance procedure although the investigation by the Torrington Police Department was not yet completed. That investigation, however, subsequently found no evidence of the crime of bribery. It is noteworthy that the author of the sworn statement which implicated Sevetz, who was also the alleged donor of the satellite dish, refused to speak with the investigating officers.
On April 28, 1999, three months after the termination of Sevetz, the CT Page 8493 local newspaper reported that he had been terminated from previous municipal jobs and that he had a criminal record. The article sparked a reopening of the initial police investigation. Although the second police investigation resulted in a finding that there was no probable cause that Sevetz committed any crime in the City of Torrington, the report questioned his character and credibility. Sevetz did not disclose on his employment application information about his previous municipal terminations despite the instruction on the application form to provide an "accurate, complete, full-time and part-time employment record"[1]. The application form also contained above the applicant's signature, the following statement:
 I hereby declare the information provided by me in this application is true, correct and complete to the best of my knowledge. I understand stand that if employed, any misstatement or omission of fact on this application shall be considered cause for my dismissal.
(Emphasis added.)
B. The Arbitration Panel
The unrestricted submission to the panel of arbitrators[2] presented two questions:
Was the termination of Mark Sevetz for just cause?
 If not, what shall the remedy be?
The panel, over the objection of the union, permitted the city to introduce the after discovered evidence as to Sevetz's previous municipal terminations and as to his criminal record. The evidence was admitted via the police investigative report. Sevetz did not testify during any portion of the hearings.
The panel found that the city, based on a preponderance of the evidence did not have just cause to terminate Sevetz on January 27, 1999.[3] The panel found that, at the time of termination, there had been no fair, impartial investigation and that there had been no proof of any wrong doing. The panel declined to consider the after-discovered evidence in fashioning a remedy, opining that it had "no jurisdiction" to substitute charges or to affect a remedy based on that evidence. The city had argued that the after-discovered evidence provided just cause for Sevetz's termination on the date the information became known to the city, i.e., April 28, 1999. The city further argued that it would violate publicCT Page 8494policy to reinstate Sevetz to his official position in the city's building department given the fact that he would have been justly terminated on April 28, 1999. The city, therefore, objected to any award of reinstatement and any award of back pay beyond April 28, 1999.
The panel declined to consider the city's public policy argument, concluding:
 Although the Panel does not view public policy considerations lightly, the legislature enacts public policy and "the judiciary decides what public policy considerations are and the manner in which those considerations may affect an arbitration award."
(Emphasis added.)
The panel sustained the grievance and ordered that Sevetz be reinstated as of the date of the award[4] with full back pay.[5]
III. CLAIMS OF THE PARTIES:
A. The City's Position:
Pursuant to General Statutes § 52-418[6], the city asks the court to vacate the panel's award. The city claims that the award was procured by "undue means" and that the panel "so imperfectly executed its powers that a mutual, final and definite award was not made." The city alleges that the award was not based on a preponderance of the reliable and probative evidence; (2) fails to draw the proper legal inferences as to Sevetz's credibility; (3) fails to apply the proper legal standards in fashioning a remedy; and (4) violates the public policy of the state by reinstating Sevetz to a sensitive municipal position despite overwhelmingand unrefuted evidence of his untruthfulness and deceit."
The city asserts that, at the arbitration hearing, it called eight witnesses while no witnesses, including Sevetz, were called by the union. One of the city's witnesses, its personnel director, testified that had he known of Sevetz's previous municipal employment history, he would not have hired him and that Sevetz's failure to disclose that history was cause for termination.
The city offered three alternative arguments to the panel in its effort to convince the panel to deny the grievance. First, the city urged the panel to find just cause for termination as of the date of termination. Second, the city argued that the after-discovered evidence of dishonesty coupled with Sevetz's failure to testify should cause an inference that CT Page 8495 Sevetz's denial that he accepted the satellite dish was untrue and should have provided just cause for termination as of the termination date. Finally, the city argued that, in the event that neither of the first two alternatives were adopted by the panel, the panel should fashion a remedy which takes into account the after-discovered evidence and should find just cause for Sevetz's termination as of the date of discovery of that evidence.
The city, being well aware of the policy of our courts which favors the arbitration process and mandates liberal construction of arbitration awards, nevertheless, argues that the award in this case contravenes the statutory proscriptions of § 52-418 (a) and contravenes a well established public policy.
The city claims that the panel improperly refused to exercise the wide discretion granted to it by the unrestricted submission in ruling that the panel had no jurisdiction to consider the impact of the after-discovered evidence on its duty to fashion a remedy. The city asks this court to find that the failure to consider the post discharge evidence deprived the city of its right, pursuant to the unrestricted submission, to a full consideration by the panel of all possible outcomes and, thereby, constituted the "undue means" and "imperfect execution" referred to in the statute. As authority for the city's position that evidence of an employee's post discharge conduct must be considered by an arbitration panel not only in supporting or refuting the grounds alleged for termination, but also in deciding whether reinstatement would be an appropriate remedy, the city cites the U.S. Supreme Court, Connecticut Courts and the comments made by this panel's chairperson in admitting the after-discovered evidence.[7]
The city also claims that had the panel properly considered the after-discovered evidence, it would have found just cause for Sevetz's termination as of the date of discovery. Specifically, the city agues that the panel should have and would have found that Sevetz submitted a dishonest job application and would have been terminated as a result thereof at the time his dishonesty was discovered. The city further asserts that had the panel reached the conclusion urged by the city it would have violated a dominant and well-defined public policy in ordering Sevetz reinstated. The city, therefore, asks that this court take a fresh look at the arbitration award by conducting a de novo review of that award. Having done so, the city asks the court to vacate the award.
B. The Union's Position
The union correctly points out that it is not the court's prerogative to substitute its judgment for that of the arbitration panel when the CT Page 8496 court disagrees with the panel's conclusions or methodology. The union argues that even the public policy exception to the general rule favoring arbitration awards must be narrowly construed and clearly demonstrated. The union also asks the court to conduct a de novo review of the award, however, the union asserts that, having done so, the court will be unable to identify a well-defined and dominant public policy in this case. The union further asserts that should the court find an applicable public policy, the award does not contravene such policy.
The union contests the assertion by the city that it is the public policy in Connecticut that neither a court nor an arbitration panel should order reinstatement of an employee, wrongfully discharged, who would have been terminated in any event for other legitimate reasons. The union argues that the public policy exception carved out by the courts in arbitration cases must be grounded in an alleged violation of a state statute. No such violation is alleged in this case.
The union also argues that in the event that this court were to find that a well-established public policy is implicated in this case, there is no basis for a finding of a violation of the public policy advanced by the city. The union asserts that the employment application presented to Sevetz did not request information about his previous firings. The union claims that Sevetz, in completing the application, made no misstatements or omissions. The union queries how Sevetz could be charged with giving inaccurate information, when the application form did not request such information. The union, therefore, concludes that since the panel had no factual basis to find cause for Sevetz's discharge from the after-discovered evidence, the panel correctly decided that said discharge must stand or fall upon the circumstances known to the city at the time of the discharge. The union asks this court to follow the general rule and to confirm the arbitration award by denying the city's application.
IV. ISSUES PRESENTED
Although the obvious issue before the court is whether to vacate the arbitration award in this case, the determination of that ultimate question depends on the answers to the following questions:
 A. Should the arbitration panel have considered the after-discovered evidence in deciding whether there was just cause for Sevetz's termination as of January 25, 1999?
B. Should the arbitration panel, having found that Sevetz termination as of January 25, 1999, was without CT Page 8497 just cause, nevertheless, have considered the after-discovered evidence in fashioning a remedy?
 C. Does the after-discovered evidence provide just cause for Sevetz's termination as of April 28, 1999, the date such evidence was discovered by the city?
V. APPLICABLE LAW
In its quest to appropriately address and provide legally sound answers to the questions presented by the facts of this case, this court has undertaken a searching inquiry as to nature and status of arbitration law in light of those facts.
A. JUDICIAL REVIEW OF ARBITRATION AWARDS
An excellent analysis of the law in Connecticut regarding judicial review of arbitration awards is found in State v. AFSCME, Council 4,Local 387, AFL-CIO, 252 Conn. 467 (2000). In that case, a correction officer had been discharged from his employment as a result of placing an anonymous, obscene and racist telephone call to a state legislator while on duty. The arbitration award ordered reinstatement. The trial court vacated the award. Justice Norcott, writing for the majority, upheld the trial court's finding that there was just cause for dismissal after instructing us as follows:
We begin our analysis with a restatement of familiar principles reflecting this court's traditional deference to arbitral awards. "`We have consistently stated that arbitration is the favored means of settling differences and arbitration awards are generally upheld unless an award clearly falls within the proscriptions of § 52-418 of the General Statutes.' Board of Education v. AFSCME, 195 Conn. 266, 270, 487 A.2d 553 (1985); Board of Education v. Bridgeport Education Assn., 173 Conn. 287, 290, 377 A.2d 323 (1977); International Union v. Fafnir Bearing Co., 151 Conn. 650, 653, 201 A.2d 656 (1964); Board of Education v. Local 818, 5 Conn. App. 636, 639, 502 A.2d 426 (1985). `A challenge of the arbitrator's authority is limited to a comparison of the award to the submission.' Bic Pen Corporation v. Local No. 134, 183 Conn. 579, 584, 440 A.2d 774
(1981); see also American Universal Ins. Co. v. DelGreco, 205 Conn. 178, 186, 530 A.2d 171 (1987); Board of Education v. AFSCME, supra, 271; Caldor,CT Page 8498 Inc. Thornton, 191 Conn. 336, 340, 464 A.2d 785
(1983); aff'd, 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985); Bruno v. Department of Consumer Protection, 190 Conn. 14, 18, 458 A.2d 685 (1983); Bridgeport v. Bridgeport Police Local 1159, 183 Conn. 102, 106, 438 A.2d 1171 (1981); Board of Education v. Local 818, supra, [639]." Watertown Police Union Local 541 v. Watertown, 210 Conn. 333, 338, 555 A.2d 406
(1989).
 "Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) Stratford v. International Assn. of Firefighters, AFL-CIO, Local 998, 248 Conn. 108, 115, 728 A.2d 1063 (1999).
"In spite of the general rule that challenges to an arbitrator's authority are limited to a comparison of the award to the submission, an additional challenge exists under § 52-418 (a)(4) when the award rendered is claimed to be in contravention of public policy. New Haven v. AFSCME, Council 15, Local 530, 208 Conn. 411, 416-17, 544, A.2d 186 (1988); Stratford v. Local 134, IFPTE, 201 Conn. 577, 590-91, 519 A.2d 1
(1986); Board of Trustees v. Federation of Technical College Teachers, 179 Conn. 184, 195, 425 A.2d 1247
(1979); Stamford v. Stamford Police Assn., 14 Conn. App. 257, 259, 540 A.2d 400 (1988); State v. Connecticut Council 4, CEU, AFSCME, 7 Conn. App. 286, 290, 508 A.2d 806 (1986). . . . This challenge is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] CT Page 8499 is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the board's award clearly violates an established public policy mandate." (Citations omitted; internal quotation marks omitted.) Watertown Police Union Local 541 v. Watertown, supra, 210 Conn. 339-40.
 This court recently has held, in an issue of first impression, that the judicial review of whether an arbitral award implicates and violates public policy is necessarily de novo review. Schoonmaker v. Cummings Lockwood of Connecticut, P.C., 252 Conn. 416, 418, A.2d (2000). "Where there is no clearly established public policy against which to measure the propriety of the arbitrator's award, there is no public policy ground for vacatur. If, on the other hand, it has been determined that an arbitral award does implicate a clearly established public policy, the ultimate question remains as to whether the award itself comports with that policy. We conclude that where a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does in fact violate public policy.
Here, the trial court set forth the "two-step analysis . . . often employed [in] deciding cases such as this. First, the court determines whether an explicit, well-defined and dominant public policy can be identified. If so, the court then decides if the arbitrator's award violated the public policy." The trial court determined that Frederick's act of placing an anonymous, obscene and racist telephone call while on duty in a state correction facility, from a state CT Page 8500 owned telephone, was a violation of explicit public policy. This public policy is articulated in both § 53a-183, the offense for which Frederick was given accelerated rehabilitation, and the relevant regulations of the department of correction.
(Emphasis added.) Id., 473-475.
Justice Norcott concluded that the trial court was correct in its determination that the arbitration award violated a clearly defined public policy because it ordered reinstatement of an employee who violated both state statute and department of correction employment regulations. The supreme court also concluded that the trial court's decision was "properly grounded in statutory law and legal precedent." (Emphasis added.) State v. AFSCME, supra, 252 Conn. 473.
B. Unrestricted Submission
Both parties agree that Sevetz's submission of the grievance in this case to the arbitration panel was unrestricted. "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breath of the issues, reserving explicit rights, or conditioning the award on court review." IndustrialRisk Insurers v. Hartford Steam Boiler Inspection Ins. Co., 258 Conn. 101,109 (2001). In the absence of any such qualifications, an agreement is unrestricted. Carroll v. Aetna Casualty Surety Co., 189 Conn. 16, 20
(1983). A party should not be permitted to object to an award which accomplishes precisely what an arbitration panel was commissioned to do because said party merely disagrees with the result. American UniversalIns. Co. v. DelGreco, 205 Conn. 178, 186-187 (1987). Parties should be bound by a decision that they contracted and bargained for, even if that decision is deemed to be "unwise or wrong on the merits."Quigley-Dodd v. General Accident Ins. Co. of America,256 Conn. 225, 249 (2001). Because the parties have chosen to resolve their dispute via a contracted arbitration process rather than by pursuing judicial remedies," it is the arbitrator'sview of the facts and of the meaning of the contract that they have agreed to accept". (Emphasis added.) United PaperworksInternational Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38,108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court cannot overturn his decision simply because it disagrees with his factual findings contract interpretations, or choice of remedies. Id., 36-38. Thus, in an unrestrictive submission, even serious error committed by an arbitrator does not justify court interference unless the arbitrator exceeded the scope of his authority. CT Page 8501 However, even with an unrestricted submission, the public policy exception referred to by Justice Norcott in AFSCME, Local 387, supra, is applicable.
C. THE PUBLIC POLICY EXCEPTION
The public policy exception to the general rule of favoring arbitration awards was recognized by the U.S. Supreme Court in W.A. Grace Co. v.Rubber Workers, 461 U.S. 757 (1983) in which the court stated, at page 766:
 ". . . a court may not enforce a collective bargaining agreement that is contrary to public policy. . . . the question of public policy is ultimately one for resolution by the courts."
In Misco, supra, 489 U.S. 42 the court explained its reasons for carving out the exception:
 That doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act, and is further justified by the observation that the public's interests in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements.
The court cautioned, however, that any alleged public policy must be "properly framed" and any violation of the same must be "clearly shown", Id., 43.
The public policy exception, recognized by Justice Norcott, was recently utilized by the appellate court in Local 1042 v. Board ofEducation of Norwalk, 66 Conn. App. 457 (2001) wherein the court stated:
 These well established principles governing consensual arbitration are subject to certain exceptions. Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418. . . .
(Emphasis added.) Id., 463. CT Page 8502
In their determination as to whether a well-defined, dominant and explicit public policy is implicated our appellate courts have relied upon common sense, the obvious and municipal charters. In State v.AFSCME, Council 4, Local 2663, AFL-CIO, 59 Conn. App. 793, cert. denied,255 Conn. 905 (2000), the court found that the existence of the important public policy of protecting and nurturing children was "almost too obvious to mention," Id., 798. In that case, the court also stated that "common sense commands that it is utterly inappropriate to place potentially troubled children in daily contract with a convicted drug offender," Id., 806. In New Haven v. Local 884, 58 Conn. App. 746, cert. denied,254 Conn. 929 (2000), the court found that the language in a city charter could provide an explicit, dominant and well-defined public policy sufficient to avoid an arbitration award.
In most cases, however, the court's have found the requisite public policy "by reference to the laws and legal precedents and not from general considerations of supposed public interests." South Windsor v. PoliceUnion Local 1480, 255 Conn. 800, 815 (2001);[8] Groton v. UnitedSteelworkers of America, 254 Conn., 35, 45-46 (2000).
The union would limit this court's inquiry to that public policy derived only from a violation of law and in direct conflict with state statute and ignore any reference to established legal precedent. The city argues, however, that federal and state legal precedent has established as public policy that neither courts nor arbitrators should order the reinstatement of an employee who would then be terminated on other grounds.
D. The Legal Precedent
In Presten v. Phelps Dodge Copper Products Co., 35 Conn. App. 850
(1994), Judge Foti stated:
 Public policy would seem to disfavor compensating an employee for the loss of future wages, even though he was wrongfully discharged, when the employer proves by a fair preponderance of the evidence that it subsequently discovered evidence of employee misconduct that would have justified the termination of employment.
(Emphasis added.) Id., 858.
The case involved the issue as to whether a jury should have been instructed that they could consider after acquired evidence of employee misconduct in assessing damages for lost wages for his wrongful CT Page 8503 termination. The issue presented was one of first impression in Connecticut. Based upon the public policy pronouncement, the appellate court held in favor of the employer, reversed the trial court's denial of the requested instruction and ordered further proceedings. In Chabot v.Waterbury, Superior Court, judicial district of Waterbury, Docket No. 101562 (March 29, 1996, Vertefeuille, J.), the court applied the stated public policy to limit a wrongfully terminated employee's recovery of back wages to a date when after discovered evidence would justify his termination.
In Chabot, Judge Vertefeuille not only cited Phelphs-Dodge, supra, for that public policy finding, but also cited an identical federal policy established by the U.S. Supreme Court in McKennon v. Nashville BannerPublishing Co., 513 U.S. 352 (1995), 11 5 S.Ct. 879, wherein the Supreme Court held that:
 (1) after-acquired evidence of the employee's wrongdoing must be taken into account in determining the specific remedy, lest the employer's legitimate concerns be ignored.
 (2) The proper boundaries of remedial relief in cases of this type must be addressed on a case-by-case basis. However, as a general rule, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds. The proper measure of backpay presents a more difficult problem. Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, it cannot be required to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if it might have gone undiscovered absent the suit. The beginning point in formulating a remedy should therefore be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered.) The court can also consider any extraordinary equitable circumstances that affect the legitimate interests of either party.
(3) Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds CT Page 8504 alone had the employer known of it at the time of the discharge.
(Emphasis added.) Id., 360-362.
E. DE NOVO REVIEW
As indicated, counsel for both the city and the union have agreed that if this court finds that the city's challenge to the award that it violates public policy has a legitimate and colorable basis, de novo review is appropriate. See Schoonmaker v. Cummings Lockwood ofConnecticut P.C., 252 Conn. 416, 426. Ordinarily when a court undertakes a de novo review it decides the matter presented to it "as an original proposition unfettered by, and ignoring," the previous result. Kerin v.Stangle, 209 Conn. 260, 264 (1988); Prince v. Sheffield, 158 Conn. 286,298 (1969). Counsel, in this case, agreed that a de novo review of the panel's decision could consist of this court taking a "fresh look" at that decision. In arriving at its decision, therefore, this court has chosen not to review the hundreds of pages comprising two loose-leaf notebooks. Rather, this court has opted to review the panel's award and the one exhibit cited by counsel in each of their memoranda, i.e., Sevetz's employment application.[9]
This court has chosen to limit its de novo review in this fashion, not only due to the consensus of counsel, but also to afford maximum deference to the fact-finding panel. It is the arbitration panel's responsibility to determine the facts, assess credibility of the witnesses and draw inferences therefrom; it is not this court's function to do so. In taking a fresh look at the decision of the panel, this court has made every reasonable presumption in favor of confirming the award and in favor of the procedure followed by the panel. Gary Excavating Co.v. North Haven, 160 Conn. 411 (1971). This court has also conducted its de novo review in light of the panel's statement at page 17 of its award that the judiciary decides public policy and the manner in which it affects an arbitration award.
VI. DISCUSSION OF ISSUES
A. The Effect of the After-Discovered Evidence on Sevetz January 25, 1999
Termination.
The case of Ass'n of W. Pulp Paper, Local 78 v. Rexam, 221 F.3d 1085
(9th Cir. 2000), involved an employee of a specialty paper company who was terminated for leaving work without permission while on reprimand status for excessive absenteeism. The union filed a grievance on behalf CT Page 8505 of the employee which ultimately was submitted to the arbitrator via an unrestricted submission posing the same two questions posed to the panel in the instant case:
 Was the termination of Mary Greene for just and sufficient cause under the terms of the labor agreement?
If not, what shall be the remedy?
The arbitrator did not find just cause for Greene's termination, however, the arbitrator did consider after termination evidence in the form of the employee's dishonesty at the arbitration hearing. The arbitrator, therefore, decided to award back pay and benefits, but denied reinstatement as the grievant could no longer be trusted. The union filed a petition to vacate the award arguing that the arbitrator exceeded the scope of the issues presented by the submission. The U.S. District Court for the district of Oregon dismissed the petition. In upholding the action of the district court, the court of appeals distinguished between the use of after-acquired evidence of misconduct to justify the initial termination and the use of such evidence in the fashioning of a remedy. The court held that the "arbitrator should consider only events occurring up through the date of termination to decide whether termination was supported by just cause when it occurred." The court further stated, however, that "this truism does not speak at all to the question of the appropriate remedy, and whether consideration of post-termination conduct is proper in the evaluation of that issue (Id., 1089). The court of appeals agreed with the district court's holding that:
 (1) Whether a termination is supported by just cause is a discrete issue which should be addressed separately from that of a remedy; and (2) that what takes place following a termination may well be a viable basis for limiting the remedy."
The court of appeals, ninth circuit, agreed with the fifth circuit's holding in Gulf Coast Industrial Workers Union v. Exxon Co., 991 F.2d 244
(1993) that it was error for an arbitrator to rely on post-discharge behavior in deciding whether the employer had just cause to fire him in the first place Id., 225-226. Thus, both federal circuits follow a policy of mandating separate consideration by an arbitrator of post termination factors from the initial just cause determination. (Rexam, supra, 221 F.3d 1090.) The ninth circuit also found that its holding was consistent with "industrial common law" in that post termination issues may be considered in fashioning an appropriate remedy even if the initial termination was wrongful. Id. The court concluded, as did the district CT Page 8506 court, that ordering reinstatement of an employee who would then, again, be immediately terminated, "would constitute an exercise in futility." The court added that its holding was also consistent with national labor policy favoring "quick resolution of labor disputes outside the courtroom." Id.
In relying on the general legal principles favoring arbitration; in deferring to the factfinding and credibility-finding function of the panel and in applying the specific findings in Rexam, this court will not disturb the panel's finding that Sevetz's termination on January 25, 1999 was "not for just cause".
B. The Effect of The After-Discovered Evidence In Fashioning A Remedy
This court finds, however, that it was error for the panel, having admitted, the after-discovered evidence involving Sevetz's previous municipal employment history, not to consider said evidence in fashioning a remedy. From the federal and Connecticut cases cited and discussed herein, the panel should have discovered and considered what has been established by legal precedent as a well-defined, explicit and dominant public policy. That policy finds its best expression in Phelps-Dodge, supra, and bears repeating:
 Public policy would seem to disfavor compensating an employee for the loss of future wages, even though he was wrongfully discharged, when the employer proves by a fair preponderance of the evidence that it subsequently discovered evidence of employee misconduct that would have justified the termination of employment.
This court further finds that the panel's failure to consider the after discovered evidence deprived the city of its right to full consideration by the panel of all possible outcomes. That failure, as the city argues, did indeed constitute the "undue" means and "imperfect execution" of its powers as referred to in § 52-418 (a) sub-sections (1) and (4) respectively.
The recognition and implementation of this public policy is especially applicable to the arbitration of grievances arising out of termination from municipal employment. The public has a right to expect honesty, good-faith and fair-dealing from its government employees. Arbitration panels should acknowledge and appreciate that expectation which is a truism that is obvious and grounded in common sense — a truism which may, in and of itself, constitute a public policy. See Magnan v.Anaconda Industries, Inc., 193 Conn. 558, 572, (1984) (good faith and CT Page 8507 fair dealing in employment contracts).
C. The Effect of The After-Discovered Evidence On Reinstatement
Although the panel, in this court's view, should have considered the after-acquired employment history evidence in fashioning a remedy, this court finds the effect that such consideration would have on the issue of Sevetz's reinstatement was and remains for the panel's determination. Given the public policy found by this court to be an essential ingredient in the panel's fact-finding function, it is for the panel to determine whether the city is able to prove by a fair preponderance of theafter-discovered evidence that Sevetz's reinstatement would be volative of that public policy. Specifically, it is up to the panel to determine whether Sevetz's alleged previous municipal firings were grounds for termination. It is up to the panel to determine whether Sevetz's alleged dishonest and incomplete employment application or criminal record would provide the city with just cause for his termination. It is the panel's responsibility to determine, based upon the impact of the after-discovered evidence on the so-called "recognized elements of just cause",[10] whether the city had sufficient cause to terminate Sevetz. Finally, in the event the panel does find just cause for termination in light of the after-discovered evidence, it is for the panel to find the effective date of that termination. The panel, of course, is to make these necessary findings in light of the clearly established public policy annunciated in Phelps Dodge, supra. In discharging its fact-finding responsibilities, the panel may, in its discretion, make a determination as to whether to hear new evidence, either from the city, the union or both. Board of Education v. East Haven Education Assn., 66 Conn. App. 202,217 (2001).
VII. CONCLUSION:
This court concludes that insofar as Sevetz's termination of January 25, 1999, is concerned the panel's determination of "no just cause" will remain undisturbed. This court, however, will, pursuant to General Statutes § 52-418 (b), direct a rehearing by the panel on the issue of what impact, if any, the after discovered evidence relating to Sevetz's municipal employment history, his alleged criminal record, and the completion of his employment application, would have on his reinstatement to his position in the building department of the city of Torrington. This court directs the arbitration panel to follow and to be guided by the public policy established in Phelps-Dodge and fully discussed herein.
VIII. ORDERS:
CT Page 8508
It is hereby ordered that:
A. Plaintiff's application to vacate the arbitration award should be, and it is, granted;
B. The matter is remanded to the arbitration panel, consisting of Madeline M. Matchko (labor member), John B. Margenot, Jr. (management member) and Susan E. Halperin, Esq. (panel chair and public member), for further proceedings not inconsistent with this memorandum.
C. Upon remand, the panel may receive such evidence, if any, that the panel may deem appropriate in the circumstances and may render such award as it deems proper.
Wilson J. Trombley Judge